## Holcomb *versus* Roberts.

1. Roberts bought wood-leave and died; his widow had it cut and directed its removal; the vendor prevented the removal; the widow *afterwards* took out administration and sued the vendor. *Held*, that she could maintain the action.

2. The relation of the administration to the death of the intestate will be admitted to support his rights, and ratify acts for the benefit of his estate, and to give a remedy where otherwise there would be none.

March 23d 1868.   Before Strong, Read, Agnew and Shars-wood, JJ.   Thompson, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county*: No. 89, to January Term 1868.

In the court below, Kate B. Roberts, administratrix, &c., of J. L. Roberts, deceased, brought an action of assumpsit against Sterling Holcomb, Jr.   The writ was issued May 12th 1866.

In the spring of 1863, Roberts, the decedent, bought of Holcomb "the oak timber on lot No. 135, in Pittsfield township," and paid for it.

There was evidence that Holcomb, before the purchase by Roberts, owned a saw-mill and water-power on the lot.   One Shattuck, who owned a timber-lot near, by agreement with Holcomb put stave-sawing machinery into Holcomb's mill.   Each was to use the mill and to pay to the other as rent one-eighth of the staves, &c., manufactured by them respectively.   Roberts bought Shattuck's timber and his interest in the machinery and then purchased Holcomb's timber, as above stated.   Roberts died in September 1863.   In the spring of 1864, P. J. Taft entered on the lot as agent of the widow, Kate B. Roberts, and by her authority cut and manufactured a considerable quantity of staves.   When about to haul them away to a mill belonging to Roberts, he was forbidden by Holcomb and arrested on a capias in trespass issued at the suit of Holcomb and prevented from removing the staves. The widow took letters of administration on Roberts's estate, August 10th 1864.

There was evidence that Roberts was to have the use of Holcomb's mill to saw what timber he pleased at $1 per day.   Holcomb claimed that the timber was to be sawed at his mill, but did not allege that the manufacture there was a condition of the sale of the timber.

The defendant's point was:—

"There can be no recovery unless it appears that defendant, after the granting of letters of administration, refused to permit the plaintiff to take the timber in accordance with the contract."

The court (Johnson, P. J.) answered the point in the negative and charged, amongst other things:—

"If there was a valid contract that the timber should be manu-

[Holcomb *v.* Roberts.]

factured at defendant's mill and it was not, for such a violation defendant would have his remedy by action, but could not reclaim the timber nor prevent its removal."   *   *   *   " If therefore the plaintiff was prohibited from taking the timber, she has a right to recover its value at the time and place of such interference."

There was a verdict for the plaintiff for $1050.

The defendant took a writ of error and assigned for error the denial of his point and the above-stated portions of the charge.

*W. D. Bowen,* for plaintiff in error.

*L. D. Wetmore,* for defendant in error.

The opinion of the court was delivered, April 2d 1868, by

READ, J.—The plaintiff's intestate purchased from the defendant the oak timber on lot No. 135, in Pittsfield township, and paid him for it. In the spring of 1864, P. J. Taft, as the agent and by the authority of Kate B. Roberts, the widow of J. L. Roberts, the intestate, cut and made a considerable quantity of staves, without objection by the defendant. But when he commenced to haul them to Roberts's mill, at Pittsfield, he was forbidden, and finally arrested on a capias in trespass, issued by defendant; and this prevented him from removing the staves.

Letters of administration on the estate of J. L. Roberts were issued to his widow, the plaintiff, on the 10th of August 1864, and this suit was brought to recover damages for this breach of contract, and the first question is, can it be maintained by the administratrix, and does the grant of the letters of administration in this case relate back to the death of the intestate and place her in the same condition as if she were an executrix?

The leading cases on this subject are our own case of Leber *v.* Kauffelt, 5 W. & S. 445; Tharpe *v.* Stallwood, 5 M. & Gr. 760 (44 Eng. C. L.); Foster *v.* Bates, 12 M. & W. 226, cited and approved in Rockwell *v.* Saunders, 19 Barb. 480, and Priest *v.* Watkins, 2 Hill 225.

An administrator may maintain an action of trespass for taking away the goods of his intestate after his death and before the grant of the letters of administration. "It would be strange, indeed," says C. J. Tindal, "if an administrator might sue for a trespass committed in the lifetime of his intestate and for one committed after the grant of letters of administration, but not for one committed in the intermediate time:" 5 M. & Gr. 773.

So, where a person having sent a quantity of goods abroad for sale, died intestate, and after his death the defendants purchased the goods from the agent of the deceased there, who sold them for the benefit of the intestate's estate, and subsequently to the sale the plaintiff took out letters of administration to the intestate and

[Holcomb v. Roberts.]

sued the defendants for the price of the goods, it was *held* that the action was maintainable; that the title of an administrator, though it does not exist until the grant of administration, relates back to the time of the death of the intestate, so as to entitle the administrator to sue in assumpsit for goods sold and delivered; and that as the act of the agent was ratified by the plaintiff after he became administrator, it was no objection that the intended principal was unknown at the time to the person who intended to be the agent: 12 M. & W. 226.

So where a note belonging to the estate of an intestate was paid to his widow, who afterwards took out letters of administration, it was held they related back and legalized the payment: 2 Hill 255.

In Leber *v.* Kauffelt, Judge Sergeant says: "There are cases in which, for the benefit of the estate and to support the right, the law makes letters of administration relate back to the death of the intestate, so as to render the intervening acts done by the administrator valid and binding." "The distinction, therefore, seems to be, that the relation back will be admitted for the purpose of supporting the rights of the intestate and of ratifying acts for the benefit of his estate and giving a remedy where otherwise there would be none."

These principles cover the present case and the court were therefore right in negativing the defendant's point—"That there can be no recovery unless it appears that after the granting of letters of administration he refused to permit the plaintiff to take the timber in accordance with the contract."

The two other specifications of error are to the charge of the court, in which we perceive no error, under the circumstances mentioned by the judge.

Judgment affirmed.