James B. Neale and Joseph Buffington, Orr Buffington and E. J. Knox, Executors of Grier C. Orr, deceased, *v.* Alexander Dempster, Appellant.

[Marked to be reported.]

*Mortgage—Bond—Release.*

A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, and subject to remedies which are as unlike as personal actions and proceedings in rem, are nevertheless so far one that payment of either discharges both, and a release or extinguishment of either without actual payment is a discharge of the other, unless otherwise intended by the parties.

*Release—Mortgage—Debt secured by mortgage.*

Where a vendor of land, taking a purchase money mortgage, agrees that if a certain sum of the mortgage debt per acre shall be paid by the vendee he will release from the lien of the mortgage any portion of the land which the purchaser shall ask and describe, proportioned to the number of acres paid for, such portion of the land will be released not only from the lien of the mortgage, but also from the debt secured by the bond; and if judgment be entered upon the bond the lien of such judgment will be confined to the portion of the land not released.

Argued Nov. 6, 1896. Appeal, No. 192, Oct. T., 1896, by defendant, from order of C. P. No. 1, Allegheny Co., June T., 1896, No. 181, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a bond.

Rule for judgment for want of a sufficient affidavit of defense.

The defendant filed an affidavit of defense which was as follows :

That in the spring of 1891 the above named Grier C. Orr, since deceased, and James B. Neale, one of the above named plaintiffs, were negotiating with the defendant for the sale by them to him of the tract of land situated in Westmoreland county, described in the plaintiffs' statement of claim, containing one hundred and forty-five acres and eighty-four perches, for the price or sum of $50,000, payable one fifth in cash on the delivery of the deed, and the balance in four equal annual payments of $10,000 each, without interest; that the average price per acre of said land was $345, and the most desirable and most valuable parts of said tract were not at that time, and have not been since that time, worth more than $500 per acre ; that the object and purpose of the deponent in negotiating for the purchase and in the purchasing of said tract of land was to lay out on a part of the same a plan of lots, and to sell the same in lots to different purchasers, as he might from time to time be able to make such sales ; and in order to carry this object and purpose into effect successfully, it was necessary that the parts of said tract so laid out in lots by him should be free from all liability for the unpaid portion of the purchase money; that this object and purpose of the deponent was fully known to and understood by the said James B. Neale and Grier C. Orr. Under these circumstances the deponent refused to purchase, unless it was agreed that the land itself should be the only security for the unpaid portion of the purchase money, and that the deponent should not be personally liable for such unpaid portion, and that, as payments were made, a certain portion of the land should be released and discharged from all liability for the unpaid instalments. This was agreed to by the said Neale and Orr, and it was also agreed by them with the deponent that the quantity of land to be so released and discharged should not exceed one acre for each $1,000 paid by the deponent to them, that amount being nearly three times the average value per acre of the land and twice the value per acre of the most valuable parts of it, and the written agreement of May 26, 1891, a correct copy of which is hereto

annexed and hereby made part hereof, was executed by the deponent and the said Neale and Orr, and $1,000 paid by the deponent to them, and, on July 1, 1891, a deed for the said tract of land was executed and delivered by said Neale and Orr to the deponent, and on the same day the deponent paid to them $9,000, and executed and delivered to them his mortgage on the said land, which mortgage is recorded in Westmoreland county, in mortgage book, vol. 45, page 410, and a correct copy of which is hereto attached and hereby made a part hereof, and also executed and delivered to them his bond, a copy of which is attached to the plaintiffs' statement of claim. That on July 1, 1892, the deponent paid to the said Neale and Orr the further sum of $10,000. In consideration of which payments the said Neale and Orr, on June 30, 1893, executed and delivered to the deponent their release of twenty acres and 76 $\frac{3}{100}$ perches, a correct copy of which release is hereto annexed and hereby made a part hereof, which release was recorded in Westmoreland county, in mortgage book, vol. 56, page 281, on August 21, 1893. And deponent further says, that he laid out a plan of lots on the said twenty acres, and has sold a portion of the same.

Deponent further says that at the time of the execution of said agreement of May 26, 1891, and of the said deed of said Neale and Orr to the deponent and the execution and delivery of his, deponent's, said bond and mortgage to them, and of the execution and delivery by the said Neale and Orr of their said release to him, it was the intention, and so agreed and understood by the said Neale and Orr, and by the deponent, that there was no personal liability on the deponent for the payment of any of the unpaid portion of the purchase money of said land secured or to be secured by the said bond and mortgage, and that for each $1,000 of purchase money paid by the deponent to them he was entitled to have one acre of said land released and discharged from all liability for said debt, which included both said bond and mortgage. And deponent further says, that, in consideration of the payment of $20,000 by him to the said Neale and Orr as hereinbefore set forth, they, the said Neale and Orr, by their said release of June 30, 1893, a copy of which is hereto attached, did release and discharge the said 20 acres and 76$\frac{3}{100}$ perches described in said release

from all further liability to them for the said debt under, upon or by virtue of the said bond or mortgage, and that such was, as affiant believes and expects to be able to prove, the intention and understanding of the said Neale and Orr and of the deponent in the execution of the said release, and that said release was intended as a satisfaction and discharge of said debt evidenced by said bond and mortgage, so far as the said 20 acres and $76\frac{10}{100}$ perches of land was concerned, and that the said 20 acres and $76\frac{3}{100}$ perches of land, nor any other property of the deponent's, except the remaining 125 acres of said tract, is not now liable in any manner for the payment of said bond and mortgage. The release on the mortgage alone amounts to nothing, if the plaintiffs could at once proceed to seize the same land for the same debt by an action on the bond which the mortgage secured.

And deponent further says, that he is willing to convey to the said plaintiffs all the remaining 125 acres of land conveyed to him by said deed and described in the plaintiffs' statement of claims, clear of encumbrances created by him, and that he has executed and tendered to the said plaintiffs, on April 21, 1896, a good and sufficient deed for said 125 acres of land, in satisfaction of said bond and mortgage, which they have refused to receive, and he now brings said deed into court here and asks to be allowed to deposit the same in court for the use of said plaintiffs, in satisfaction and discharge of said bond and mortgage. And he further says, that he has paid all costs accrued in this action up to this date. And he further says, that by reason of the facts herein set forth the plaintiffs are not entitled to recover a judgment for any sum whatever against him in this action.

The agreement referred to in the affidavit of defense was as follows:

This agreement . . . . witnesseth that for and in consideration of the sum of $1,000, paid by the said Dempster to the said Neale and Orr, the receipt whereof is hereby acknowledged, and for the further sum of $9,000 to be paid by the said Dempster to said Neale and Orr on the first day of July, A. D. 1891, and the further sum of $10,000 to be paid by him to them on the first day of July of each of the years 1892, 1893, 1894 and 1895, without interest, (making an aggregate sum $50,000),

they, the said J. B. Neal and G. C. Orr, hereby sell and agree and bind themselves their heirs and assigns to convey to the said A. Dempster his heirs and assigns by a good and sufficient warrantee deed a title in fee simple . . . . to the said Dempster, to that tract of land . . . . bounded . . . . and containing not less than 140 acres. The said Dempster agrees and binds himself to pay to the said Neale and Orr, the aforesaid sums, on the days and times specified; namely, $9,000 on the first day of July, 1891, on the receipt of deed as above stated, and to give a duly executed bond and mortgage, the lien of which to be limited to the land described, to secure to said Neale and Orr the payment of the said instalments of purchase money. It is hereby further agreed by and between the parties hereto that the said Neale and Orr, their heirs and assigns shall release from the lien of said mortgage any portion of said property which the said Dempster, his heirs and assigns, may ask and describe, provided that the area thereof shall not exceed the amount of one acre for each $1,000 paid on account of said purchase money. So that for each acre of land so released the said Neale and Orr, their heirs or assigns, shall have been paid the sum of $1,000, by the said Dempster, his heirs or assigns.

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Errors assigned* were (1) above order; (2) in not restricting the lien of the judgment.

*D. T. Watson,* with him *W. W. Thomson,* for appellant.—It will be noticed that this affidavit of defense in unequivocal language avers that the purpose and intent of the article of agreement, the bond and mortgage, and the release, was to discharge from the lien of the unpaid instalments of purchase money, which was evidenced by the bond, the land for which Dempster paid at the rate of $1,000 per acre. There was no contrary averment.

Under the affidavit of defense it became at least a question of fact as to the intent and purpose of the release, and the court should not have entered judgment generally, as it did, against the defendant.

A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, and subject to

remedies which are as unlike as personal actions and proceedings in rem, are, nevertheless, so far one that payment of either discharges both, and a release of extinguishment of either without actual payment is a discharge of the other, unless otherwise intended by the parties: Safe Dep. & Trust Co. v. Kelly, 159 Pa. 82; Seiple v. Seiple, 133 Pa. 470; Fleming v. Parry, 24 Pa. 50; Gordonier v. Billings, 77 Pa. 498.

Equity has always been administered through common law forms in Pennsylvania: Seitzinger v. Ridgway, 9 Watts, 498; Mathews v. Stephenson, 6 Pa. 498.

*J. M. Hunter*, of *Hunter & Beatty*, for appellees.—The affidavit of defense was manifestly insufficient: Madore's App., 129 Pa. 15; Martin v. Berens, 67 Pa. 459; Clark v. Partridge, 2 Pa. 13; Hunter v. McHose, 100 Pa. 41; Merriman v. Bush, 116 Pa. 276; Baugh v. White, 161 Pa. 638; Rearick's Exr. v. Rearick, 15 Pa. 72; Morgan v. McKee, 77 Pa. 231; R. R. v. Swank, 105 Pa. 555; Halberstadt v. Bannan, 149 Pa. 51; Dixon-Woods Co. v. Phillips Glass Co., 169 Pa. 167; Ashman v. Weigley, 148 Pa. 61; Irwin v. Shoemaker, 8 W. & S. 75; Third Reformed D. Church v. Jones, 132 Pa. 462; Russell's App., 93 Pa. 384; Rowley's App., 115 Pa. 150; Nulton's App., 103 Pa. 286; Smith v. Ewing, 151 Pa. 256; Bailie v. Bailie, 166 Pa. 472; Long's Est., 168 Pa. 346; Eberly v. Groff, 21 Pa. 256; Pusey v. Wright, 31 Pa. 394; Naglee's Est., 52 Pa. 160; Eaton's App., 66 Pa. 493.

The lien is but an incident to the judgment, and a restriction of it to certain designated lands does not affect the judgment as a personal security: Stanton v. White, 32 Pa. 358; Dean's App., 35 Pa. 405; McMurray v. Hopper, 43 Pa. 468.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

We are unable to agree with the learned court below in their interpretation of the instruments in question between the parties to this litigation. The first of these papers is the agreement for the sale of the land to the defendant, dated May 26, 1891. After reciting that the grantors had agreed to sell a tract of one hundred and forty acres of land, situate in the borough of Parnassus, for an aggregate sum of $50,000, to be paid in several designated sums, and at intervals between the payments, the

agreement contains this provision: "The said Dempster agrees and binds himself to pay to the said Neale and Orr the aforesaid sums on the days and times specified; namely, $9,000 on the 1st day of July, 1891, on the receipt of the deed as above stated, and to give a duly executed bond and mortgage, the lien of which to be limited to the land described, to secure to said Neale and Orr the payment of the said instalments. It is hereby further agreed by and between the parties hereto, that the said Neale and Orr, their heirs and assigns shall release from the lien of said mortgage any portion of said property which the said Dempster, his heirs and assigns may ask and describe, provided that the area thereof shall not exceed the amount of one acre for each $1,000 paid on account of said purchase money. So that for each acre of land so released the said Neale and Orr, their heirs or assigns shall have been paid the sum of $1,000, by the said Dempster, his heirs or assigns."

What was the meaning of the parties to this agreement, as to the effect of subsequent payments and releases, given to effectuate its terms? The learned court below held that upon payments amounting to $20,000 and a designation of twenty specific acres of the land which the defendant desired to have released, as to which a formal release was executed, the land thereby released was only discharged from the lien of the mortgage, and was still subject to a lien for the entire residue of the purchase money. The reason stated in the opinion for reaching this conclusion is that "it is clear that the release of a portion of the mortgaged premises was never intended to be a satisfaction of the debt unpaid, and the only effect of the release had was to relieve the land from the lien of the mortgage pro tanto, and so far as the defendant was the owner of the land at the time the judgment was entered on the bond, it is liable to execution for this debt." If this be so, what was gained by the purchaser by having a release of this specific land from the lien of the mortgage? If this particular part of the land is still liable for the whole of the remaining purchase money, why have it released at all? What possible object could be subserved by releasing twenty acres upon the payment of $20,000 of the purchase money, if the same twenty acres still remained subject to a lien for the whole of the rest of the purchase money, $30,000 more? The condition of the purchaser would be much worse under the

stipulation for the release than if no such stipulation had been made. The whole debt of $50,000 would in that event have been distributed upon the whole one hundred and forty acres, but under this decision the twenty acres alone have to pay not only the $20,000 already paid, but are liable to pay $30,000 more, from the payment of which it was expressly agreed that the twenty acres should be released.

Technically the argument is faulty, as it seems to us, in assuming that it was not the intention of the parties to release the twenty acres from the payment of the unpaid part of the whole debt, when unless such was the intention of the parties, the release provided for in the agreement was absolutely useless. The mortgage embraced the entire debt, and the agreement provided that the release of the lien of the mortgage—the whole mortgage, not a part of it—should result from the payment of $1,000 per acre for every acre designated by the purchaser. The debt expressed by the bond was the very identical debt represented by the mortgage. That very bond is described in the mortgage, and it is the payment of that particular bond that the mortgage was given to secure. How can it be then, that when a part of the land described in the mortgage is absolutely released from the lien of the mortgage, because of the actual payment of a stipulated price per acre, and the sum paid is a part of the debt released, that the land released is not released from the debt secured by the bond?

The theory seems to be that there was one lien of the mortgage, and another lien of the bond, and hence a release of the lien of the mortgage is not a release of the lien of the bond. But there is no such thing as a lien of the bond. It is a mere personal obligation of the obligor and is not at all essential to the existence of the mortgage. The mortgage could be given to secure the payment of the debt, without any bond, note or any other obligation. Now the effect of a release of the lien of the mortgage is to discharge the debt which the mortgage was given to secure, and whether the debt is evidenced by a bond, or note, or by nothing at all, except the mortgage itself, is a matter of indifference. The principle that the payment of the debt secured by a mortgage is a satisfaction of the mortgage and entitles the debtor to a discharge of record, is so perfectly familiar that no authorities need be cited for it. The principle that the dis-

charge of a mortgage by an entry of satisfaction on the record is a discharge of the debt it was given to secure, and hence discharges the bond or other evidence of the debt, is also perfectly familiar doctrine. Of course if the entry of satisfaction was not intended as a discharge of the debt, the mortgagee upon showing that fact, is entitled to prosecute his bond or other security and collect his money. But if the debt has actually been paid, then the bond is discharged as well as the mortgage by an entry of satisfaction. Thus it may easily happen that a mortgage creditor may be willing to relieve his debtor's land from the lien of the mortgage, when the debt is not paid, in order to enable the debtor to sell the land divested of the mortgage, and wherever that is the fact, it may be shown, and the debt remain intact, notwithstanding an entry of satisfaction on the record of the mortgage. But if the debt itself be paid there is no question at all that the discharge of the mortgage discharges the bond as well as the mortgage. All of this has been repeatedly expressed in our decisions, the rule being thus stated in one of our earlier cases: Fleming v. Parry, 24 Pa. 47. "A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, and subject to remedies which are as unlike as personal actions and proceedings in rem, are, nevertheless, so far one that payment of either discharges both, and a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties. . . . Had the mortgage been paid, the law would treat the bond as paid." In this case it was shown that the debt was not paid, and the release of the mortgage was only intended to relieve the land of its lien so as to enable the debtor to sell it clear of incumbrances, and that question we said should be submitted to the jury. In the case at bar there are no such facts. On the contrary the undisputed fact is evidenced by the original agreement of sale, that certain portions of the land were to be released from the lien of the mortgage upon the payment of a part of the debt to secure which the mortgage was given. A large part of the debt, which was the purchase money of the property, was actually paid, and of course the purchaser was entitled to a full release of that part of the land which he selected for the purpose, under the terms of the agreement. The very effect of the agreement was to

obtain a release in full of all lien for the debt. The fact that the purchaser was obliged to pay $1,000 per acre in order to get the release, when he only paid $345 per acre for the land, is conclusive proof that both the sellers and the purchaser intended this payment to be the price of an absolute release of the land from all lien. It is impossible to reconcile such a payment at such a price with any other intent. The affidavit of defense positively alleges and it is most reasonable to infer that the object of the purchase was to cut up a part of the tract into small lots and sell them out in detail to purchasers, and that in order to do that it was necessary that the defendant should be able to sell such lots entirely free from all liens for the unpaid portions of the purchase money. If it were necessary to have a hearing on this question, as a matter of course, the case would have to go to a jury to determine it. But we are clearly of opinion that the proper construction of the original agreement requires such an interpretation, and that it would be the duty of the court on the trial of such an issue to give a binding instruction to that effect. It was also agreed in the original contract and in the bond that there was to be no liability other than that of the land sold, for the payment of the debt. This of course eliminates all idea of a mere personal liability for the purchase money of the land.

The doctrine as expressed in Fleming v. Parry, supra, was repeated in Seiple v. Seiple, 133 Pa. 470, and in Safe Deposit Company v. Kelly, 159 Pa. 82. In the former case we said, " The legal presumption is that the satisfaction of the mortgage works an extinguishment of the debt, and the burden of removing that presumption is thrown upon the creditor. . . . This is a presumption of law which necessarily flows from the fact of satisfaction set forth in the case stated, and, unless facts are averred in the case stated which rebut the presumption of extinguishment of the debt, the court cannot infer them." In the latter of the above cases the entry of satisfaction was the voluntary act of the mortgagee. She retained the bond, and the debt which it represented was not paid. There we held that the entry of satisfaction, of its own force, extinguished the mortgage and all remedies upon it, and in the action on the bond the question of intent to extinguish the debt by the satisfaction of the mortgage was properly left to the jury. We said, " It

will be perceived that the question in this case, as in the Fleming Case, was not a question of the gift of a bond, but a question as to the extinguishment of a debt which was evidenced by a bond, for the security of which a mortgage was also given, and the mortgage was extinguished by a solemn entry of satisfaction on the record of the mortgage, duly signed and sealed by the mortgagee. What was the effect of this entry of satisfaction? Did it extinguish the mortgage only, or did it also extinguish the debt? If it was so intended it did have that effect, and so the court instructed the jury." It will be remembered that in this case the debt had not been paid, and the bond and mortgage were retained by the mortgagee; but there were facts enough in evidence to justify the jury in inferring that the mortgagee intended by extinguishing the mortgage to extinguish the debt also, and we sustained the court below in leaving the case to the jury in that way.

How very much stronger is the present case. Here the very undertaking of both parties in the agreement of sale was that if $1,000 dollars per acre should be paid by the purchaser the vendors should release from the lien of the mortgage any portion of the land which the purchaser should ask and describe. The money was paid, the land was described, the release was executed. Because the money paid was a part of the purchase money of the land, and because the release of the mortgage extinguished the purchase money debt as to that land, the bond also for the same debt was incapable of enforcement against that particular land. Unless we give it this effect the agreement on that subject was meaningless and useless. We are clearly of opinion that in any judgment that may be entered on the bond for the remainder of the purchase money it should be plainly expressed that the judgment should not be enforced against any property of the defendant, real or personal, except such portion of the tract of 140 acres sold to the defendant as remains, after leaving out the twenty acres and seventy-six and three tenths perches described in the release. The assignments of error are sustained, but we do not think it necessary to direct an issue, as the question is a question of law arising on the interpretation of the papers.

The judgment of the court below is reversed at the cost of the appellees and the record is remitted with instructions to enter a judgment in accordance with this opinion.