## Purman's Estate.

Argued March 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*O. R. Hughes,* for appellant, No. 23, and for appellee, No. 24.

*H. C. Sayers,* with him *Lloyd E. Pollock,* for appellants, No. 24.

*Lloyd E. Pollock,* with him *A. A. Purman,* for appellee, No. 23.

OPINION BY MR. JUSTICE DREW, April 17, 1939:

James J. Purman, a well-known lawyer of Greene County, died February 8, 1934, leaving a will naming the Union Trust Company of Waynesburg, Pa., executor of his estate. Since the will gave all the estate to his children and expressly excluded his wife, Hazel Z. Purman, she declared her intention to take against the will. On March 6, 1935, the executor presented its first and final account, and exceptions were filed by the Union

Deposit & Trust Company for the use of the Union Trust Company and other assignees of the Union Deposit & Trust Company, and by Mrs. Purman. The auditor dismissed all the exceptions filed for the use of the Union Deposit & Trust Company, and dismissed all but two of those filed by Mrs. Purman. From the order of the court below sustaining the dismissal of these exceptions and confirming the auditor's report, these appeals were taken.

The sole question involved in the appeal of the Union Trust Company and the other assignees of the Union Deposit & Trust Company is whether the auditor erred in refusing to allow a claim for $10,446.18 plus interest which these appellants allege is due from the estate on a bond to which Mr. Purman was a party. The facts pertaining to this claim are as follows: On May 24, 1912, James J. Purman and eight others borrowed $15,000 from the Union Deposit & Trust Company of Waynesburg, Pa., and as security for the payment gave their joint and several bond payable June 14, 1913, together with a mortgage on certain properties owned by them. On February 25, 1921, Purman personally paid $1,500 with interest to that date on this debt. At that time there was placed on the margin of the record of the mortgage an entry showing that Purman had paid his proportionate share of the obligation. In 1924 the Union Deposit & Trust Company assigned $1,704.84 of the debt due on the bond and mortgage to Florence Dunn, Elmas Loughman, and The Citizens National Bank. On April 20, 1927, pursuant to a resolution adopted by its Board of Directors, the Union Deposit & Trust Company executed a release under seal of James J. Purman from his obligation on the bond and mortgage. The debt due on the bond and mortgage, less the amount already assigned in 1924, was thereafter assigned to the Union Trust Company in 1930.

The assignees of the Union Deposit & Trust Company contend that the release given Purman operated only to

relieve him of his liability on the mortgage and did not release him from his liability on the bond. This interpretation of the release cannot be sustained. The bond and mortgage were both given to secure the same obligation and in such circumstances a release of one releases both unless a contrary intention appears: *Neale v. Dempster*, 179 Pa. 569; *Longacre v. Beers*, 106 Pa. Superior Ct. 57; *Artisti-Kote Co. v. Benefactor B. & L. Assn.*, 64 F. (2d) 407. In *Neale v. Dempster*, supra, this court said (p. 577) : "But if the debt itself be paid there is no question at all that the discharge of the mortgage discharges the bond as well as the mortgage. . . . 'A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, . . . are, nevertheless, so far one that payment of either discharges both, and a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties. . . .' "

In the instant case not only is evidence of an intent to retain the liability on the bond entirely lacking, but on the contrary the release itself shows a deliberate intention to release Purman from both the mortgage and the bond. The release states: "Whereas, James J. Purman, on and prior to February 25th, 1921, paid to Union Deposit & Trust Company of Waynesburg, Pennsylvania, the sum of $1,500.00 with interest thereon to that date, being the amount of said mortgage debt payable by him, and for which his interest in the mortgaged premises stood bound, and *for which he stood bound by the bond* . . . Now, we, Union Deposit & Trust Company of Waynesburg, Pennsylvania, in consideration of the premises . . .we do hereby acknowledge, have covenanted, promised and agreed, . . . that no execution or other final process, or proceeding at law or in equity, shall be sued, levied, taken or executed by us, our successors or assigns, by virtue of the said mortgage *or mortgage bond* . . ." (Italics added). In the light of this language there can be no doubt that the bank released

Purman from his liability on the bond. Since the bond was assigned by the Union Deposit & Trust Company to the Union Trust Company after this release was given, the latter can have no claim on the bond since the assignee took subject to all defenses which Purman had against the assignor: *Ferris Motors Corp. v. Lebegern,* 276 Pa. 395; Williston on Contracts, sec. 432.

Those claiming under the partial assignment by the Union Deposit & Trust Company in 1924 contend, however, that even though the release operated to relieve Purman of his liability on both the bond and mortgage, it cannot bar their claim since it was executed after the assignment made to them. The difficulty with their position lies in the fact that the assignment made to them was only a transfer of the individual liability of J. G. Loughman, one of the original parties to the bond and mortgage. The assignment of the mortgage stated: "For value received, we do hereby sell, assign, transfer and set over unto Florence V. Dunn, Elmas Loughman, and the Citizens National Bank of Waynesburg, Pa., the sum of $1,704.84 of the debt and interest of this mortgage being $1,055.10 and $649.74 accrued interest to this date on the share of the sum secured by J. G. Loughman and being a lien against the share of the mortgaged premises formerly owned by J. G. Loughman. . . ." The assignment of the bond likewise stated that it was "the share of said debt owed by J. G. Loughman." By the express terms of this agreement the bank assigned only its claim against J. G. Loughman individually, and did not intend to assign the joint claim which it then had against the parties to the bond. Hence even prior to the release these assignees could have maintained no claim against Purman. The court below therefore properly dismissed the exceptions of the assignees of the Union Deposit & Trust Company to the auditor's report.

In her appeal, Mrs. Purman, the widow, assigns as error the dismissal of her exceptions to the auditor's report, which exceptions relate principally to the right of

the Trust Company to act as executor and to various claims allowed by the auditor. A careful examination of the record convinces us that the court below properly refused to sustain any of these exceptions.

Mrs. Purman first challenges the right of the Union Trust Company to act as executor. She contends that since the Union Trust Company, as assignee of the Union Deposit & Trust Company, made a claim for the amount it alleged was due on the bond executed by decedent to the executor's assignor, it had an interest adverse to the estate which disqualified it from serving as executor. Although the Orphans' Court may upon proper petition remove an executor under Section 53(a) of the Fiduciaries Act of June 7, 1917, P. L. 447 (superseding Section 1 of the Act of May 1, 1861, P. L. 680), where it appears that the executor has an adverse interest which may interfere with a proper administration of the estate (see: *Sharpless's Estate,* 209 Pa. 69; *Henry's Estate,* 54 Pa. Superior Ct. 274), we see no reason to interfere with the procedure followed in this case. No petition was ever filed by the widow and no objection was made by her to the bank's serving as executor until after it had administered the estate and filed its first and final account. We agree with the conclusion of the auditor and the court below that there is no reason to suspect that the interests of the estate had been jeopardized by the fact that the Union Trust Company had filed its claim. Moreover, since the adverse interest could affect only the assets covered by its claim and since, as we have already indicated, the auditor properly dismissed the claim, the estate has in no way been prejudiced thereby.

Mrs. Purman further assigns as error the allowance by the auditor of a claim of $300 made by A. A. Purman, who was the brother of the decedent and the attorney for the executor. The services performed by A. A. Purman for which he filed this claim consisted of collecting all decedent's papers and documents and reading, filing and disposing of the same. He did this work at the expressed

request of the executor. Due to the fact that the decedent, in spite of his large law practice, had never kept any accounts of charges made by him or records or files of papers entrusted to his care, this work required more than six weeks to complete. The record fully sustains the findings of the auditor that the work was necessary and beneficial to the estate and the claim reasonable in amount. The fact that some of the documents may have been removed by A. A. Purman to his own office prior to the granting of letters is immaterial. At decedent's death it was known that he had left a will which named the Trust Company as executor, and there is evidence that the delay in the granting of letters was at Mrs. Purman's request. The removal of the papers was necessary for the proper conservation and administration of the estate, was done by the representative of the executor, and under such circumstances the letters of administration, when granted, relate back so as to validate the acts previously performed: *Holcomb v. Roberts,* 57 Pa. 493; *Roberts v. Messinger,* 134 Pa. 298; *Bair v. Chambers,* 70 Pa. Superior Ct. 356.

The validity of the credit taken by the executor for the payment of a judgment to the Union Trust Company and allowed by the auditor is also questioned by Mrs. Purman. The facts concerning this transaction fully sustain the finding of the auditor that the executor was justified in taking this credit. In 1932 Albert Luxner, decedent's son-in-law, gave the Union Trust Company his judgment note in the sum of $1,125. Subsequently the decedent pledged to the bank as collateral security for his son-in-law's debt two negotiable bonds. Mrs. Purman argues that these bonds were in the decedent's safe deposit box at his death, but several persons testified that the bank retained them in its possession, and the auditor so found. Although this testimony was given by employees of the bank, it is unnecessary to decide whether they were in the first instance competent to testify as to a transaction occurring prior to the dece-

dent's death, since by being called by Mrs. Purman for cross-examination relative to this matter they thereby became competent: Gallagher v. Rogan, 330 Pa. 545. Following the decedent's death, and upon default of the obligation for which the bonds were pledged, the Trust Company sold the bonds and applied the proceeds of the sale, amounting to $1,156.44, to the payment of the debt ($1,125 on the judgment, $26.44 for interest, and $5 for costs). It was for this amount that the executor charged itself in the account. Mrs. Purman contends that the pledgee could not apply the proceeds of the sale of the bonds to its claim since such action would be in violation of Section 1 of the Act of April 26, 1855, P. L. 308, which provides: "That no action shall be brought . . . to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought . . . shall be in writing. . . ." This contention is clearly without merit. Here the pledgee did not attempt to maintain any action upon an unwritten promise made by the decedent to answer for the debt of another. Being in possession of the pledged bonds, the Trust Company exercised its right to sell them and apply the proceeds to the obligation they secured. The statute of frauds is a limitation upon the judicial authority to afford a remedy, but it does not render the transaction invalid: Producers Coke Co. v. Hoover, 268 Pa. 104; Manufacturers L. & H. Co. v. Lamp, 269 Pa. 517. Hence the pledgee was entitled to satisfy its claim by foreclosing on the pledged bonds and the executor properly credited itself for this amount.

We have carefully examined the other assignments of error filed by Mrs. Purman and find them to be without merit.

Order affirmed; costs to be paid out of the estate.