<hr />

451 A.2d 1029

**Paul F. BECKER, Appellant,**

**v.**

**Marian Fuchs MONTGOMERY, a/k/a Marian Trexler, a/k/a Marian Montgomery Trexler, Executrix of the Last Will and Testament of Edward Fuchs, deceased.**

Superior Court of Pennsylvania.

Argued April 12, 1982.

Filed Oct. 22, 1982.

David Paul Andrews, Hollidaysburg, for appellant.

Frederick B. Gieg, Jr., Altoona, for Fuchs, appellee.

James H. English, Altoona, for John Fuchs, participating party.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

Appellant, Paul F. Becker, has appealed the order of a Court en banc of the Court of Common Pleas of Blair County, dated June 1, 1981, which dismissed his exceptions to, and otherwise affirmed and sustained, the adjudication

and decree nisi of the late Honorable Robert B. Campbell, former President Judge, dated November 9, 1979.

On November 24, 1976, appellant filed an action in equity requesting specific performance of an agreement of sale of real property, dated May 22, 1972.[1]

The parcel of real estate at issue was owned by Edward Fuchs, who died testate on March 26, 1960. Appellee Marian Fuchs Montgomery, also known as Marian Montgomery Trexler (Trexler), was the daughter of said Edward Fuchs and was appointed the Executrix of his Estate pursuant to the terms of his Last Will and Testament. However, letters testamentary were not issued to her until the Will was probated on November 12, 1976, sixteen years after his death.

The agreement of sale, dated May 22, 1972, concerning the subject property, which consists of approximately 200 acres, was executed by Becker and Trexler.[2] The agreement was also signed by Harry Deem of the J.W. Hubler Agency, as the real estate broker and "agent for owner and party of the first part." The agreement provided for a total sales price of $12,000, with settlement to be made on or before July 1, 1972. Becker paid an earnest money deposit of $400.00 at the execution of the agreement.

Apparently, during the years 1972 through 1976, Becker made various attempts to accomplish the closing of the transaction. Trexler consistently refused to deliver a deed or to probate her father's will. She stated that the other heirs refused to approve the sale for $12,000.00. However, Trexler subsequently listed the same parcel of real estate with another real estate agency in 1975. On September 13, 1976, she entered into a second agreement of sale for the same parcel with a third party for a purchase price of

[1]. We initially note that the present appeal only concerns specific performance of the agreement and does not, otherwise, address any issues concerning legal damages.

[2]. The agreement of sale does not specify that Trexler executed in her fudiciary capacity. However, the agreement does describe the property as "the Edward Fuchts (sic) Estate".

$67,000. Pursuant to the terms of this second agreement of sale, on November 19, 1976, ("seven days following the probate of the Will of Edward Fuchs") Trexler executed a deed conveying title to said third party. That deed is currently being held in escrow, pending the outcome of these proceedings.[3]

Appellant has raised numerous issues on appeal.[4] However, due to our decision in this matter, we will address but one issue, to-wit: Is an agreement for the sale of the real estate of a decedent binding and enforceable against the decedent's estate if it is executed by the executrix of the estate prior to the probate of the will and the formal issuance of letters testamentary?

Concerning this issue, appellant argues that, pursuant to Section 3155(a) of the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P.L. 508 1164, as amended, 20 Pa.C.S.A. Section 3155(a) "[l]etters testamentary shall be granted by the Register to the executor designated in the will, whether or not he has declined a trust under the will." Appellant argues that, as a result of the word "shall," the granting of letters testamentary to the designated executor is a mandatory or ministerial act, and not a discretionary act, for the Register. Accordingly, appellant contends that the formal granting of letters testamentary should "relate back" so as to ratify or validate prior acts of the executrix.

Both parties cite *McGuire v. Erie Lackawanna Railway Company,* 253 Pa.Super. 531, 385 A.2d 466 (1978), in support of their positions. Prior to *McGuire,* the "relation back"

**3.** The lower court properly refused to address any issues concerning the validity of this deed.

**4.** Appellant raises additional issues seeking to interpret the agreement of sale dated May 22, 1972, namely:
1. Did the agreement of sale contain an obvious ambiguity regarding the parties to the agreement of sale?
2. If so, should parol evidence have been admitted to resolve said ambiguity?
3. Was the subsequent agreement of sale improperly admitted into evidence?
Because we find this agreement to be unenforceable against the estate of Edward Fuchs, we need not respond to these issues.

doctrine had been applied to situations wherein the relating back of an executor's authority would "benefit" the estate. *Lovejoy v. Georgeff,* 224 Pa.Super. 206, 303 A.2d 501 (1973). In *McGuire,* this Court concluded that a better test was " . . . whether in all circumstances 'relation back' will achieve a just result." *McGuire,* supra, 253 Pa.Super. at 535, 385 A.2d at 468.

"*McGuire* was cited with approval by our Supreme Court in *Estate of Gasbarini v. Medical Center of Beaver County, Inc.,* 487 Pa. 266, 409 A.2d 343 (1979), where it was held that the doctrine should be applied to factual circumstances 'on all fours' with those in *McGuire.* And, as one would expect, *McGuire* was also followed in *D'Orazio v. Locust Lake Village, Inc.,* 267 Pa.Super. 124, 406 A.2d 550 (1979), another case almost factually identical to *McGuire.*" *Wilkes-Barre General Hospital v. Lesho,* 62 Pa.Cmwlth. 222, 226, 435 A.2d 1340, 1342 (1981).

However, we find that *McGuire,* supra, and its progeny, are distinguishable from the instant case. These cases all concern the circumstances by which an estate may sue or be sued, prior to the formal appointment of an administrator. In all of these cases, the decedent died intestate. In *McGuire,* supra, Judge Spaeth, who formulated the "just result" test, distinguished that case from *Lovejoy,* supra, since, in *Lovejoy,* " . . . when the complaint was filed, the identity of the administrator was uncertain; . . . ." 253 Pa.Super. at 537, 385 A.2d at 469. Judge Spaeth concluded that this type of "instability" was not present in *McGuire,* due to the fact that the administrator had paid the filing fee for the issuance of letters of administration, prior to his filing of a complaint, in his capacity as administrator of his daughter's estate and prior to the expiration of the applicable statute of limitation. The only remaining act, the posting of bond, was accomplished approximately three weeks later. Therefore, Judge Spaeth concluded that the posting of the bond, which legally finalized the administrator's ap-

pointment, "related back" so as to validate the prior filing of suit by the administrator prior the expiration of the statute of limitations.

The instant case is basically distinguishable from *McGuire* and other cases involving a decedent who has died intestate, since the decedent's will specifically appoints Trexler as executrix.

Therefore, we hold that the granting of letters testamentary to an executrix who has been specifically appointed in a will relates back so as to validate *some* acts previously performed by the executrix. However, the question thus becomes, what type of acts are so validated?

In support of his position, appellant cites *Beckman v. Owens,* 135 Pa.Super. 404, 408, 5 A.2d 626, 627 (1939), in which this Court held:

> ". . . [A]n executor 'derives his authority to act from the will. The granting of the letters testamentary by the Register of Wills is a pro forma act, to give effect to the will of the testator.' . . . '[P]arties, *upon whom is a necessity of present action,* may proceed on the presumption that [the executor appointed] will accept, and their action is valid until he actually renounces, or they have notice that he will not accept.'" [Citations omitted]. (emphasis supplied).[5]

and, 135 Pa.Super. 408, 5 A.2d on page 627:

> An executor, before the granting of letters, may perform not only acts "merely passive," but also those of an imperative nature, for example, he may arrange for burial of decedent if there is no immediate next of kin. It cannot be broadly stated, therefore, that an executor named in a will, under all circumstances, is entirely devoid of authority to represent the estate until the granting of letters.

---

**5.** Although, *Beckman,* supra, involved a decedent who had died testate, Judge Spaeth, in *McGuire,* relied on the "presumption," as enunciated in *Beckman.*

In *Beckman,* this Court concluded that a creditor of the decedent could file suit against the executor appointed in the decedent's will, prior to the probate of the will and issuance of letters testamentary. However, in *Beckman,* supra, the court also concluded that the appointment in the will " '. . . is only provisional, and requires to be approved by the law before it is complete; and therefore the title to the office of executor is derived rather from the law than from the will.' " [Citing *Shoenberger's Executors v. Lancaster Savings Institution,* 28 Pa. 459, 466], 135 Pa.Super. at 406, 5 A.2d at 627.

"In *Lowrie v. Dollar Savings and Trust Company,* 266 Pa. 135, 139, 109 A. 607, 608 the Supreme Court said: 'The appointment of one competent to act as executor avails to make him a representative of the estate so far as relates to acts in which he is merely passive, such as receiving notice of the dishonor of a note (*Schoenberger's Executors v. Lancasters Savings Institution*) but this seems to be as far as our decisions go.' " *Beckman,* supra, 135 Pa.Superior Ct. at 407, 5 A.2d at 627.

Therefore, the *Beckman* Court concluded that the filing of suit against the designated executor was valid as being "merely passive". The Supreme Court of Pennsylvania in *Purman's Estate,* 334 Pa. 238, 244, 5 A.2d 906, 909 (1939) further elaborated upon *Beckman,* supra, by concluding that ". . . collecting all decedent's papers and documents and reading, filing and disposing of the same . . . was *necessary for the proper conservation and administration of the estate,* was done by the representative of the executor, and under such circumstances the letters of administration [testamentary], when granted, relate back so as to validate the acts previously performed. [Citations omitted]." (Emphasis supplied).

*Purman's Estate* was recently quoted with approval by the Supreme Court in *Commonwealth v. Sourbeer,* 492 Pa. 17, 19, 422 A.2d 116, 121 (1980), in which the Court held that an executor had authority to consent to the search of the

decedent's residence, prior to the issuance of letters testamentary, since the search was ". . . for the conservation and administration of the estate."

In the instant case, the execution of the agreement of sale by Trexler cannot be considered as "merely passive" in nature. Furthermore, there is no evidence in the record which would support a conclusion that the immediate sale of the property, prior to the issuance of letters testamentary, was necessary for the conservation and administration of the estate.

Our scope of review in this matter is outlined by the Pennsylvania Supreme Court in *Aiken Industries, Inc. v. Estate of Wilson,* 477 Pa. 34, 39, 383 A.2d 808, 816–817 (1978):

> As an initial matter, it is to be observed that the function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower court; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of the chancellor." *Masciantonio Will,* 392 Pa. 362, 367, 141 A.2d 362, 365 (1968). See also *Yuhas v. Schmidt,* 434 Pa. 447, 258 A.2d 616 (1969). A chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal. *Jacobson & Co. v. International Environmental Corp.,* 427 Pa. 439, 235 A.2d 612 (1967).

See also *Gilmore v. Northeast Dodge Company, Inc.,* 278 Pa.Super. 209, 211, 420 A.2d 504, 505 (1980).

Our review of the record reveals that the Chancellor's findings of fact were approved by a court en banc; they are supported by adequate evidence and will, therefore, not be disturbed on appeal.

Order affirmed.