J. Irwin Shapiro, J.
The question posed for decision in this case is who, as between the plaintiffs (vendees) and the defend *476 ants (vendors) must suffer the loss of moneys deposited by the vendees under a real estate contract with an escrowee who has converted the funds to his own use.
Pursuant to the terms of the contract a deposit on account of the purchase price was left with one Irving E. Dickman, the vendors’ attorney, who unquestionably embezzled the funds. In addition to the vendors he is named as a defendant in this action. Although he interposed an answer to the complaint, he did not appear on the trial either in person or by counsel.
The contract of purchase and sale provided that “ The seller shall give and the purchaser shall accept a title such as the Security Title and Guaranty Company will approve and insure ’ ’.
It is undisputed that at the time of the closing the vendors were unable to deliver to the plaintiffs a good and marketable title by reason of the fact that a New York estate tax against a party in the chain of title had not been fixed and paid nor had an order of exemption been obtained.
The Security Title and Guaranty Company refused to approve and insure the title to the premises by reason of the outstanding estate tax except that it would insure against collection out of the premises up to a sum not exceeding $797. This was unacceptable to the vendees. An offer by the vendors to deposit a specified sum of money as security for the payment of the estate tax was likewise rejected by the vendees. In refusing to accept such an arrangement, the vendees were within their rights, since no one could foretell whether the deposit would be ample. In any event, the vendors could not deliver a title which the Security Title and Guaranty Company would “ approve and insure ” and, since no request was made by the vendors for an adjournment to perfect their title, the plaintiffs were entitled to receive back the moneys deposited by them under the contract.
The vendees contend that since the escrowee was the attorney for the vendors, it is they, the vendors, who must suffer the loss. Strange as it may seem, there is no case in point in this State. In Mechanics’ Nat. Bank v. Jones (76 App. Div. 534, 545) an agreement between debtors and their creditors was involved and the court there laid down the principles generally applicable to escrow arrangements that “ From the time the deposit is made the escrow agent becomes the trustee of both the party making the same and of the one for whose benefit it is made ”. And in Farago v. Burke (262 N. Y. 229, 233) the court said that the law imposes upon the escrowee “ a duty not to deliver the escrow to any one except upon strict compliance with the conditions *477 imposed” because in accepting the escrow arrangement he became a “fiduciary” as to both parties to the arrangement. (Bardach v. Chain Bakers, 265 App. Div. 24, 27.)
Where, in light of the general principles above set forth, should the result of the eserowee’s dereliction fall? That question seems to have first arisen and been answered in 1925 in Hildebrand v. Beck (196 Cal. 141). In that case there was a deposit of money by a purchaser of real estate with an escrow agent which was to be paid to the vendor if and when a title guarantee was secured. The escrowee embezzled the moneys deposited before the guarantee was secured. In holding that the loss must fall upon the vendee because, at the time of the embezzlement, the vendor had not yet acquired a right to receive the funds — a rule which has been uniformly followed in all subsequent cases — the court, sitting en banc, unanimously held (pp. 145-146):
“It is at once apparent that the money deposited by the vendee with the escrow company was not deposited with the company for the account of the vendor at the time the deposit was made, but that it was to be so applied when the Eshleman Bealty Company could secure for the vendee ‘ a title guarantee. ’ Pending the procurement of the title guarantee the Eshleman Bealty Company held the money in trust for the vendee and the vendor had no claim to it. In other words, the Eshleman Bealty Comany never had any money paid to it for the account of the vendor until the very instant that the company procured for the vendee ‘ a title guarantee.’ If, in the interim between the deposit of the money with the company and the securing of the 1 title guarantee ’ by the company, the money was embezzled, then it was the money of the vendee that was embezzled, and the Eshleman Bealty Company would have no authority to deliver to the vendee the title guarantee for the reason that at the instant of time when the title guarantee had been secured no money had been paid to the company for the account of the vendor.
‘ ‘ As before indicated, the finding of the trial court was that the money deposited by the vendee was embezzled shortly after its deposit. If this finding is supported by the evidence, it follows that the money embezzled was the money of the vendee, and that as a result the Eshleman Bealty Company, when delivering the deed and title guarantee to the vendee, was acting without its authority. * * * The money of the vendee having been embezzled on February 5, 1921, there was no money of the vendee’s in the hands of the company on February 26, *478 1921, when the certificate of title was issued by the title insurance company, to be applied to the account of the vendor. This being so, no title passed to the vendee, and the vendor is entitled to retain possession of the property ” (p. 147).
The rule of law thus laid down was followed in the State of California in Crum v. City of Los Angeles (110 Cal. App. 508) and in Pagan v. Spencer (104 Cal. App. 2d 588).
In the Crum case (supra, p. 514) the court stated the prevailing rule quite succinctly when it said: “ If the property in the custody of the escrow-holder is either embezzled or lost by it, then, as between the seller and the buyer, the loss falls on the one who owns the property at the time of its embezzlement or loss. For example, if the escrow-holder embezzles the purchase price before the time when, under the terms of the escrow, the seller is entitled to it, the loss falls on the buyer since it is still his money. On the other hand, if the money be embezzled after the time when the seller has become entitled to the money, the loss falls on him since it is now considered his property.”
In the Pagan ease (supra) the court held that where the purchase price of the realty was paid to an escrow holder selected by the .seller to be held until the seller obtained a decree quieting title, the loss occasioned by the escrow holder’s absconding with the funds before a decree was obtained, fell upon the buyer as title to the funds had not yet passed to the vendor. Thus again the rule was reiterated that loss would fall upon the one holding the title to the property deposited in escrow at the time of the escrowee’s default.
In Cradock v. Cooper (123 So. 2d 256 [Fla.]) the rules laid down in the California cases were recognized and accepted as the prevailing rules of law, although there the court determined that under the facts before it an exception to the rule should be applied because under the escrow agreement the depositor was in no event entitled to the return of the subject matter, irrespective of performance of the agreement.
In Turck v. Seefeldt (268 Wis. 559) and Van Dyke v. Lauer (100 N. W. 2d 335 [Wis.]) we again find acceptance of the rule that where the escrow agent embezzles the funds before the time to release them has come, he has embezzled the depositor’s money and not the funds of the one who was to receive them.
The rule thus .seems to be well settled and generally applied that if property is embezzled or lost by an escrow holder, the loss, as between seller and buyer, falls on the one who owned the property at that time. In this case the vendors were never *479 entitled to receive the moneys deposited in escrow because they never had a title which the plaintiffs were obliged to accept. Under the circumstances, the escrow moneys at all times remained the property of the plaintiffs-vendees. When they were embezzled it was the property of the plaintiffs that was embezzled and they are the ones that must suffer the loss.
The plaintiffs, without adverting to any of the cases here cited, contend that the clause in the contract which provides that, ‘ ‘ In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the Security Title and Guaranty Company, and upon such refund and payment being made, this contract shall be considered cancelled”, specifically imposes upon the defendants “ the liability to refund the down payment to the plaintiffs ” and “ that by agreeing to this clause, the defendants became a guarantor of the escrow agent, who was also their attorney.”
The clause in question is the stock clause found in a contract for the sale of real estate. It is applicable where the vendor receives the down payment under the contract and is, therefore, obligated upon his default “ to refund ” it. Such a clause cannot be deemed applicable to a situation where the vendor has nothing “to refund to the purchaser ” because he has obtained nothing from the purchaser. It is also obvious that the escrow clause was intended to be solely applicable to the fact situation at bar.
In their complaint the plaintiffs also ask that they be compensated for the legal expenses incurred by them “as attorney’s fees and for the examination of title to said premises ”. While under the agreement between the parties the vendors would be obligated “ to pay the net cost of examining the title ”, no proof was offered as to such cost.
Judgment is, therefore, directed for the defendants vendors dismissing the plaintiffs’ complaint on the merits except as to that portion thereof which seeks to recover the cost for the examination of title and as to that part the complaint is dismissed without prejudice and judgment is directed in favor of the plaintiffs against the defendant Irving E. Dickman in the sum of $1,500, with interest thereon from February 24, 1964. Ten days’ stay and 30 days to make a case.