CUDAHY, Circuit Judge.
We are asked on this appeal to review an order of the district court reviewing, in turn, an order of the bankruptcy court which determined the “net proceeds realized” from the sale of certain properties owned by the bankrupt Riverside Investment Partnership (“Riverside”). The amount of “net proceeds realized” is of consequence because the fee payable by Riverside’s trustees in bankruptcy (the “Trustees”) to the Referees’ Salary and Expense Fund (the “Fund”) is calculated as a percentage of the “net proceeds realized.” We conclude that the judgment in this matter must be vacated and the cause remanded for a redetermination of whether the sale of the properties in question was “free and clear of” or “subject to” several liens, how such redetermination may affect the “net proceeds realized” from the sale, and related matters.
I
The facts of this case are difficult to understand independent of a knowledge of the applicable law defining “net proceeds realized” in a sale of the property of a bankrupt. Hence, we shall discuss these legal standards before attempting a detailed analysis of the facts surrounding the Trustees’ sales in this case.
The law governing the collection of fees in this ease from the bankrupt’s estate for payment into the Fund is set forth in sections 40(c)(2)(a) and 40(c)(2)(c) of the Bankruptcy Act of 1898 (the “Act”).[1] Section 40(c)(2)(a) provides:
*636 Additional fees for the referees’ salary and expense fund shall be charged, in accordance with the schedule fixed by the [Judicial] conference (a) against each estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized in asset cases ....
11 U.S.C. § 68(c)(2)(a) (1976) (repealed) (emphasis supplied). Although the Act does not define “net proceeds realized,” section 40(c)(2)(c) does contemplate that “[t]he Director [of the Administrative Office of the United States Courts], with the approval of the [Judicial Conference of the United States], may make .. . rules and regulations prescribing methods for determining net proceeds realized . ... ” 11 U.S.C. § 68(c)(2)(c) (1976) (repealed).
In 1947 the Judicial Conference promulgated a rule for computing “net proceeds realized” which, as amended in 1966, provides:
1. Determination of Net Proceeds Realized in Asset Cases. In determining the amount of net proceeds realized in asset cases for the purpose of Section 40(c)(2) of the Bankruptcy Act as amended, the term “net proceeds realized in asset cases” shall mean, in the case of sale or liquidation, the amount of money coming into the estate of a bankrupt as assets of such estate which shall include the entire sale price of encumbered property when sold free and clear of all liens or, if not sold or liquidated, the fair cash market value of all property coming into the estate as assets of such estate, exclusive of all statutory exemptions whether State or Federal and exclusive of all expenses directly incurred in the operation of the debtor’s business after bankruptcy; provided, however, that where property is sold or transferred subject to a valid existing mortgage, lien or other encumbrance, the amount of such mortgage, lien or other encumbrance not affected by such sale shall not be included in determining the amount of net proceeds realized.
Reports of the Proceedings of the Judicial Conference of the United States 22 (1966) (emphasis supplied) reprinted in 2A Moore, Oglebay & King, Collier on Bankruptcy 140.05[2.5], at 1580.2 (14th ed. 1978) (hereinafter 2A Collier on Bankruptcy). The Conference rule, which is a “contemporaneous construction of section 40c(2) by those charged with administering the [Fund], ... is entitled to great deference.” Mesa Farm Co. v. United States, 475 F.2d 1004, 1007 (9th Cir. 1973).
The effect of the Conference’s rule is that when the bankrupt’s property is sold “free and clear of all liens,” the full sale price of the property constitutes the “net proceeds realized.” The fee schedule established by the Conference is then applied against this amount to compute the sum payable by the estate to the Fund.[2] However, when property is sold “subject to” a lien, mortgage or encumbrance, “the amount of such mortgage, lien or encumbrance not affected by such sale” is not included in “net proceeds realized.” The dispute in this case is whether the Trustees sold some of Riverside’s property “free and clear of” or “subject to” certain liens. If the property was sold free and clear of the liens involved here, the “net proceeds realized” must include the value of those liens, thereby increasing the amount upon which fees payable to the Fund are calculated. On the other hand, if the property was sold “subject to” those liens and if the liens were not affected by the sales, the “net proceeds realized” must exclude the value of the liens, thereby reducing the base from which fees payable to the Fund are calculated. To the extent that fees must be paid, the residual estate available to general creditors is reduced or eliminated.
II
The basic facts, as found by the district court and the bankruptcy court, are not *637 disputed. On August 30, 1976, the bankruptcy court issued orders approving the sale by the Trustees of three parcels of real estate located in Rockford, Illinois. The parcels — all apartment complexes — were encumbered with numerous liens and mortgages. The Trustees assert that throughout the process which culminated in the sales of these properties, they deliberately structured the proposed transfers so that the property would be sold “subject to” certain liens and “free and clear of” other liens. “In all available applications, notices, closing documents, real estate deeds, and releases of liens, the three sales were labeled as sales ‘subject to’ certain encumbrances.” Appellant’s Brief at 3. Moreover, the three orders issued by the bankruptcy court approving the sales specified that each sale was “subject to” certain liens and “free and clear of” certain other liens.
At the time of sale, the Trustees transferred the deeds to the properties to an escrow agent “subject to” certain specified liens. The buyer paid to the escrow agent the proceeds of a loan secured from an independent source, and the agent then discharged the outstanding liens on the properties before transferring the deeds to the buyer. The difference between the sale price and the amount of outstanding liens was then paid to the Trustees.
The Trustees do not dispute that the value of the properties, to the extent they were sold “free and clear of” any liens specified in the bankruptcy court’s order, must be included in “net proceeds realized.” The controversy here is limited to the inclusion in “net proceeds realized” of the amount of the liens to which the bankruptcy court’s orders approving the sales contemplated that the properties were subject.
A dispute arose at closing about a mortgage on one of the three properties in the amount of approximately $450,000 held by Bell Federal Savings & Loan Association (“Bell”). After arrangements for the sale were completed between the Trustees and the buyer, Bell insisted that, as a condition of discharging its lien at the time of sale, it receive a prepayment penalty of $19,000. Because the sale could not be completed without payment of the penalty, the Trustees agreed to allow the buyer to pay the penalty out of the sale price, thus reducing the proceeds paid by the buyer to the Trustees by $19,000.
The Trustees (against whom the prepayment penalty had thus been effectively assessed) then instituted a suit against Bell in the bankruptcy court to recover the penalty. Under these special circumstances, the bankruptcy court first determined that the sale of the property upon which Bell held its lien was a sale “free and clear of” all liens (including the Bell lien) and not “subject to” any liens. The court reasoned that if the sale were actually “subject to,” the buyers — not the Trustees — would be prosecuting the action against Bell. Moreover, the court noted that, since none of the liens were assumed by the buyers but were instead discharged by the escrow agent, the sale could not have been “subject to.” In any event, the Trustees were successful on the merits of the specific issue involved in the proceeding since the bankruptcy court concluded that the Trustees were not required to pay Bell a prepayment penalty.
The bankruptcy court’s holding that the sale of the parcel encumbered by the Bell mortgage was sold free and clear of all liens prompted the Trustees, who had assumed that the sales of all parcels of property were “subject to” specified liens, to request from the bankruptcy court a determination of the amount payable by the Trustees to the Fund.[3] In its decision and order determining the “net proceeds realized,” the bankruptcy court did not specifically state whether it concluded as a matter of either fact or law that the sales in question were “free and clear of” or “subject to” the various liens. Instead, the court cited an example from the Manual for Bankruptcy Judges[4] which includes the value of liens in *638 the “net proceeds realized” when outstanding liens on a bankrupt’s property are discharged by an escrow agent at the time of sale. The bankruptcy court also concluded, as a matter of law, that the liens were “ affected by the sales.”[5] Thus, the court concluded that the “net proceeds realized” from the Trustees’ sales amounted to the full sale price of the three parcels of property — slightly more than $2 million — and that the fee payable to the Referees’ Salary and Expense Fund should be computed based on that amount.[6]
Upon the Trustees’ appeal, the district court reversed the bankruptcy court’s decision except to the extent that the bankruptcy court had included the value of the Bell mortgage in the “net proceeds realized.” The district court, like the bankruptcy court, did not specifically conclude whether the sales, which purported to be “subject to” certain liens, were actually “free and clear of” or “subject to” those liens. Rather, the court noted that, where sales are “technically ‘subject to’ a lien,” the Judicial Conference’s regulation defining “net proceeds realized” provides that only liens “affected by” the sale are to be included in the calculation of “net proceeds realized.”[7] The Bell lien, according to the district court, was “affected by” the sale and thus was properly included in the “net proceeds realized”; however, no other “subject to” liens were similarly affected by the sale. The district court therefore held that the bankruptcy court erred by including the value of these other liens in the amount of “net proceeds realized.”
Ill
Both the bankruptcy court and the district court focused their concern on determining whether the sales of the three parcels of property “affected” the liens which were discharged by the escrow agent at the time of sale. We believe that the district court properly analyzed this issue when it concluded that, except for the Bell mortgage, the purportedly “subject to” liens were not “affected by” the sales. After an agreement on the assumption of the liens could not be reached with the lienholders, the buyer paid off those current lien-holders coincident with the sale of the parcels. The district court noted, however, that “[t]he record does not reflect any further dealings or subsequent litigation by the co-trustees or the bankruptcy court with reference to the liens.”[8] The mere discharge of these liens by the buyer is not, under the circumstances shown, an act which results in the liens being “affected by” the sale. In the context of the Judicial Conference regulation, the phrase “affected by” connotes action or activity by the bankruptcy court that, for example, contributes to altering legal relations under a lien which survives the sale, or contributed to establishing (or even disestablishing) legal rights under a surviving lien. Unlike the other liens in question, however, the Bell mortgage is a lien which, if it actually survived the sale, is “affected by” the sale because the bankruptcy court resolved a question about the payment of a penalty allegedly arising from the sale of the property encumbered by the Bell lien.[9]
*639 Very importantly, however, the question whether liens are “affected by” a sale is only the second step of the analysis under the Judicial Conference regulation. The first question that must be addressed is whether the sale of the bankrupt’s property was “free and clear of” or “subject to” liens; a court should properly reach the “affected by” issue only if the sale was “subject to” liens.[10]
In the instant case, neither the district court nor the bankruptcy court expressly stated whether the sales of the three parcels of property were “free and clear of” or “subject to” the specified liens. It appears that the bankruptcy court may have determined, as a matter of law, that the sales here were actually “free and clear of” all liens.[11] Nevertheless, the bankruptcy court, although apparently under no compulsion from the Conference regulation, further concluded that the liens in question were “affected by” the sales. But that question, as explained above, is only reached if the sales are “subject to” liens. Thus, we are unable to determine with certainty which analysis — “free and clear” or “subject to” and “affected by” — governed the bankruptcy court’s decision.
The district court, on the other hand, since it considered in detail whether the liens were “affected by” the sales, apparently determined that the sales were “subject to” the liens. The court did not, however, explain or even clearly articulate its conclusion on this point. This failure by the district court to explicate its reasoning is significant because it is not crystal clear that the district court flatly disagreed with the bankruptcy court on the “subject to” issue.
Moreover, the significance of the failure of either court to expressly and specifically consider the “free and clear’’/“subject to” dichotomy assumes considerable importance in light of circumstances surrounding the sales. The orders issued by the bankruptcy court approving the sales state that the sales would be made “subject to” specified liens.[12] As a matter of form, the Trustees *640 set up the sales so that all the necessary documents incident to the transactions also stated that the sales were “subject to” specified liens.
However, as a matter of what actually took place, (although we do not decide the point), it may be difficult — perhaps impossible — to characterize the sales as anything but sales “free and clear of” liens. The Trustees told the buyer that they “could only consider an offer that was subject to” the valid liens;[13] however, the mortgagees would not permit the buyer to assume the liens. The buyer thereafter secured financing from another source. At the time of the sale, the buyer and the Trustees, using the same escrow agent, tendered, respectively, the purchase money and the deeds. The escrow agent paid off the outstanding liens on the property and transferred the deeds to the buyer; the Trustees received a check from the escrow agent in an amount representing the difference between the total sale price and the amount of the liens.
Generally, in a “free and clear” sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale; in a “subject to” sale, on the other hand, the lien survives the sale in some form for some period of time, however slight. Compare Trend Mills v. Socher, 4 B.R. 465 (D.C.D.N.J.1980) (lien survives in “subject to” sale) with Circus Time, Inc. v. Oxford Bank and Trust, 5 B.R. 1 (D.Me.Bkrtcy.Ct.1979) (if property sold free and clear of lien, lien attaches to proceeds of sales). See also Second National Bank v. Blake, 600 F.2d 160, 165 (8th Cir. 1979) (per curiam); Farmers Bank v. Julian, 383 F.2d 314, 322 (8th Cir.), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). In the instant case, the deed was not transferred to the buyer until after the liens were discharged. Thus, because the liens did not survive the sale but instead were impressed on the sale proceeds, the sale is probably most accurately characterized (although we do not decide the point) as “free and clear of” liens.
Although the facts suggest that, contrary to the order of the bankruptcy court, the sales were not made “subject to” liens, it may not be appropriate in this case for the bankruptcy court to recompute the fee payable to the Fund based on a “second glance” recharacterization of the sales. As a general rule, the bankruptcy court should not order property sold “free and clear of” liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt’s estate. See Freeman Furniture Factories, Inc. v. Bowlds, 136 F.2d 136, 140 (6th Cir. 1943); Hoehn v. McIntosh, 110 F.2d 199, 202 (6th Cir. 1940); In re Unikraft Homes of Virginia, Inc., 370 F.Supp. 667, 670-71 (W.D.Va.1974); In re Bernhard Altmann International Corp., 226 F.Supp. 201, 205-06 (S.D.N.Y.1963). Cf. Standard Brass Corp. v. Farmers National Bank, 388 F.2d 86, 89 (7th Cir. 1967) (trustees abused discretion by selling property free of lien when sale returned no equity to bankrupt’s estate). The Trustees here argue that if they had been aware at the time of the sales that the bankruptcy court would later assert that the sales were free and clear of all liens, they might not have consummated the sale of the properties because insufficient equity would have been produced to cover all costs and to return equity for the benefit of general creditors. In support of this allegation, the Trustees note that
[t]he negotiations surrounding and leading up to these three sales recognize[d] that the sales had to be subject to certain uncontested liens and encumbrances by reason of the fact that a simple, mathematical computation revealed that the total of the uncontested liens, contested liens and court costs (if computed on the full price) exceeded the total purchase price. If that were to be the case, then there would have been no benefit to the creditors to pursue and complete the sales. In addition, settlements were negotiated by the Co-Trustees and their counsel relative to the contested *641 liens, and these were negotiated with full reliance that the three parcels of real estate had been sold subject to certain liens and encumbrances, thereby limiting the full extent of the court costs .... [14]
Neither the bankruptcy court nor the district court considered whether these allegations, if true, would be sufficient to estop the government from challenging the bankruptcy court’s previous order that the sales were “subject to” liens. Cf. Matter of Prescott College, 10 B.R. 316 (D.C.D.Ariz.1981) (county government estopped from challenging sale free and clear of tax liens).[15] Further, in light of the strong policy protecting both secured and general creditors evinced in part by court decisions requiring the bankruptcy court to consider before the sale whether it will order the sale free and clear of liens, we believe that the bankruptcy court must on remand give serious consideration to these factors. The bankruptcy court should also develop a record on what amounts, if any, would be available to meet general creditors’ claims depending on whether the liens in question were included in or excluded from “net proceeds realized.” The bankruptcy court must also consider and clearly decide whether the sales as carried out by the Trustees were “subject to” or “free and clear of” the liens.
The judgment of the district court is vacated and the cause is remanded to the district court with instructions to remand the proceedings to the bankruptcy court to determine the impact of various determinations of “net proceeds realized” on the position of general creditors, to determine if the sales here in question were “free and clear of” or “subject to” liens, to consider the possible application of principles of estoppel or other equitable principles and to consider the propriety of charging the bankrupt’s estate with an assessment payable to the Fund greater than that approved by the district court.
Vacated and Remanded.

. The instant action was filed on August 8, 1974, well before the provisions of the Bankruptcy Reform Act of 1978 abolishing the Referees’ Salary and Expense Fund took effect. See Bankruptcy Reform Act § 402(a) (1979). The relevancy of the instant case is limited to existing uncompleted bankruptcy proceedings governed by the 1898 Act.

. The fee schedule applicable in this case is Z'h per cent of the first $50,000 of “net proceeds realized,” and 3 per cent of the remaining balance. See Reports of the Proceedings of the Judicial Conference of the United States (1965) reprinted in 2A Collier on Bankruptcy ¶ 40.05[2.1], at 1575.

. At this point, the government intervened in the instant litigation.

. Administrative Office of the United States Courts, Manual For Bankruptcy Judges, § 605.-06(1 )(c) (4th reprint 1978). This provision, ac *638 cording to the Manual, is an example of a “free and clear” sale.

. In the Matter of Riverside Investment Partnership, No. 74-B-1653, slip op. at 6 (E.D.Wis. Bkry.Ct. Feb. 20, 1980) (emphasis in original).

. If the liens characterized as “subject to” in the court’s order approving the sales are excluded from the computation, the “net proceeds realized” amount to approximately $600,-000.

. In the Matter of Riverside Investment Partnership, No. 74-B-1653, slip op. at 6 (E.D.Wis. Oct. 29, 1980).

. Id. at 8.

. The bankruptcy court and the government apparently argue that a lien is “affected” if it is discharged at the time of sale. But such a sale accompanied by a discharge of liens is a “free and clear” sale. Hence under the Conference’s regulation, as discussed infra, the court need not analyze the sale to determine if the lien was “affected.” Indeed, such an interpretation of “affected by" is superfluous in such cases since in a “free and clear” sale it is inherent that the liens will be affected by being discharged. The “affected by” analysis is appropriate, however, in cases where the sale is made “subject to” liens. Rather than merely excluding from the *639 “net proceeds realized” the value of liens to which sales are subject, the Conference chose to maximize revenues to the Fund by including those sales where the lien survived but the bankruptcy court still acted in some capacity to “affect” the surviving lien. We do not now determine whether the property encumbered by the Bell mortgage, as discussed infra, was or was not sold “subject to” liens. On remand, only if this property is found to have been sold “subject to” liens, is it appropriate to determine whether those liens were “affected by” the sale.

. This two step analysis is evident not only from the face of the regulation but also from the circumstances prompting the Judicial Conference’s 1966 amendment. The 1966 amendment, which added the phrase “free and clear of” liens to the regulation, was intended to create uniformity in the application of the regulation so that in all cases of sales free and clear of liens, the “net proceeds realized” would include the value of the discharged liens. See Reports of the Proceedings of the Judicial Conference of the United States 22 (1966). This amendment thus created a bright line between “free and clear” sales, which are always included in “net proceeds realized,” and “subject to” sales, which are included in “net proceeds realized” only if the sales “affected” the liens. Although the general principle, expressed in 2A Collier on Bankruptcy ¶ 40.05[1.2], at 1567-68, that “net proceeds realized” often depends upon whether the property “has been justifiably administered” by the bankruptcy court is sound, see generally Lutheran Hospitals & Home Soc. v. Duecy, 422 F.2d 200, 208-10 (9th Cir. 1970), that “test” cannot be substituted for the test prescribed in the Conference’s regulation. Consideration of the Collier principle is, we believe, more appropriate after the court first determines if the sales were “free and clear of” or “subject to” liens. It appears to us that the district court may have placed more emphasis on this principle than on the Conference’s regulation, which is entitled to deference.

. Indeed, this conclusion is buttressed by the court’s citation to section 605.06(1)(c) of the Bankruptcy Manual and the court’s previous explicit holding in the Bell litigation that the sale of the property encumbered by Bell’s mortgage was a sale “free and clear of’ all liens. We agree, however, with the district court that “the examples in the Manual are merely indicative of the interpretation placed upon the regulations by the Administrative Office when it recommended the rules and regulations actually promulgated by the Conference.” Slip op. at 8.

. The record does not indicate, but it appears, that the Trustees originally drafted and submitted the actual orders issued by the bankruptcy court.

. Affidavit of William C. Koplin, ¶ 4 (Feb. 16, 1979).

. Appellee’s Brief at 7-8.

. We do not suggest that principles of estop-pel should necessarily govern the disposition of this case on remand. On the other hand, we note that this case may raise equitable questions which neither the bankruptcy court nor the district court have explored or articulated. We note that the bankruptcy court observed that the Trustees acted with the utmost diligence by finding a buyer for the properties and by compromising the numerous claims so as to produce some equity for the estate and its general creditors. Under these circumstances, it is important that the lower courts specifically consider and explain whether the sales were “free and clear of’ or “subject to” liens in terms of the Conference regulations and further consider the role, if any, of equitable principles when an after-the-fact recharacterization of the fee payable to the Fund may deprive the estate of any equity remaining after the sale.