■ HARRY CAULFIELD et al., Plaintiffs, v IMPROVED RISK MUTU-ALS, INC., et al., Appellants, and HANOVER INSURANCE COMPANY, Respondent, et al., Defendant. — Judgment reversed, on the law, with costs, and summary judgment granted, in accordance with the following memorandum: In this declaratory judgment action plaintiffs, purchasers of real property from the Freddie Thomas Foundation, Inc., a not-for-profit corporation, seek to fix responsibility for a fire loss which occurred after they took possession of the property but before the deed which had been placed in escrow was delivered. The contract documents consist of a standard Real Estate Board of Rochester purchase offer dated May 25, 1982, accepted typewritten counteroffers dated June 25, 1982 and July 16, 1982 and a contract amendment dated August 16, 1982. Purchasers' original offer contained the printed provision that "[r]isk of loss or damage to the property until *transfer of title* shall be assumed by the seller" (emphasis supplied). The offer also defined "CLOSING DATE AND PLACE" as follows: "The transfer of title to the property shall take place at the Monroe County Clerk's office on or before the 1st day of January, 1983." The Foundation's counteroffer provided, *inter alia,* that "[r]isk of loss from any cause is assumed by Seller to the *date of closing*" (emphasis supplied). The contract amendment provided that "[c]losing shall occur on or before October 1, 1982" and made the contract subject to "the necessary Supreme Court approval authorizing this conveyance." On October 1, 1982 all documents, including the deed, were exchanged and plaintiffs were permitted to take immediate possession of the property. The deed and closing papers were "held in escrow", however, pending court approval of the conveyance. Supreme Court authorization was obtained on October 29, 1982 and the deed was then recorded. Plaintiffs took possession of the premises on October 1 and obtained from defendant Millers Mutual Insurance Company, a member of the Improved Risk Mutuals group, a temporary insurance binder. The Foundation had fire insurance from defendant the Hanover Insurance Company. On October 4, 1982, the premises were partially destroyed by fire. The insurers each disclaimed responsibility on the ground that the other was liable and this declaratory judgment action ensued. On plaintiffs' motion for summary judgment, Special Term declared Millers Mutual the insurer responsible for the loss. We disagree.

The underlying issue is whether as a matter of law a "closing" occurred on October 1, 1982, three days before the fire. Under New York law, absent an agreement to the contrary, risk of loss follows possession (General Obligations Law, § 5-1311). The parties here agreed, however, that the risk of loss would remain

with the seller until the closing. Consequently, the fact that purchasers had possession when the fire loss occurred is irrelevant.

It is commonly understood that "[a] title is 'closed' when the deed conveying the property is delivered" (1 Warren's Weed, NY Real Property, Closing of Title, § 1.02; Real Property Law, § 244). When a deed is delivered *in escrow,* however, no title passes until the condition, upon which performance is predicated and title suspended, is fulfilled (*Stanton v Miller,* 58 NY 192, 201; see, also, *Van Tassel v Burger,* 119 App Div 509; *Asher v Herman,* 49 Misc 2d 475; 2 Warren's Weed, NY Real Property, Escrow, §§ 2.01, 2.04).

In this case, the parties to the contract defined "closing" in their agreement to mean "the transfer of title to the property". This printed term from purchasers' original offer was accepted by seller and never changed. Since the contract is unambiguous, the meaning of the agreement must be determined as a matter of law and effect given to the intent of the parties as indicated by the contract language (see *Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460; 22 NY Jur 2d, Contracts, § 189, p 24).

The transaction which took place between the parties did not result in a transfer of title to the property since, absent court authorization, the seller lacked the ability to deliver title. Although the papers were exchanged and the adjustments made as of October 1, the undisputed evidence is that the deed and closing papers were placed in escrow pending court approval of the transaction, which was not obtained until after the fire. Since title to the property was not transferred until the deed was released from escrow after October 29 (see *Stanton v Miller,* 58 NY 192, *supra*), there was no "closing" until that time. Thus, the risk of loss remained with the seller at the time of the fire.

The judgment is reversed, the Hanover Insurance Company declared responsible for the loss and plaintiffs' motion and Millers Mutual's cross motion for summary judgment granted against the Hanover Insurance Company.

All concur, except Hancock, Jr., J., who dissents and votes to affirm, in the following memorandum.

Hancock, Jr., J. (dissenting). The sole question is whether the date referred to in the term "[r]isk of loss from any cause is assumed by Seller to the date of closing" is the time of the escrow closing or the time that title is transferred. The above term specifically stating that the seller's risk is terminated at "the date of closing", contained in seller's counteroffer of June 25, 1982 and accepted by the buyers, supersedes the inconsistent

term in the buyers' original offer to the effect that the seller assumes the risk of loss until "transfer of title" (see 21 NY Jur 2d, Contracts, § 56, pp 472-473). Indeed, the counteroffer provided that the terms of the original offer were accepted "except that" the terms set forth in the counteroffer, which were inconsistent with or supplemental to those in the original offer, would apply. The counteroffer clearly contemplated that an escrow closing in advance of the actual passage of title would be necessary so that approval by a Supreme Court Justice could be obtained. In recognition of this circumstance, paragraph 2 (b) of the counteroffer provided that the buyers would deliver a second mortgage in the amount of $69,000 "at closing", that the balance of the purchase price (not covered by the first or second mortgage) would be paid in cash "at closing" (par 2 [c]) and that the mortgage interest would be adjusted "at the time of closing" (par 9). In each of the foregoing instances, the parties in referring to the date of closing as marking the time for a particular performance by the buyers were referring not to the date of title transfer but to the date of the escrow closing. That the parties considered the word "closing" to mean escrow closing is apparent from the subsequent amendment dated August 16, 1982, providing that "[c]losing shall occur on or before October 1, 1982", the date that escrow closing ultimately took place. There is no reason to believe that in specifying in paragraph 6 of the counteroffer of June 25, 1982, that it would assume the risk of loss "to the date of closing", the seller was agreeing to assume the risk beyond the date of the escrow closing when it would receive full payment and cease to be obligated for interest payments. On the date of the escrow closing the seller was to deliver possession to the buyers and, except for the formality of court approval, the transaction was to be fully consummated. No plausible reason is suggested why the seller, which was to be out of possession and in receipt of full payment from the buyers, would agree to remain responsible for losses beyond that date. Indeed, the buyers, in procuring their own insurance binder effective October 1, 1982, the date they assumed possession, have recognized that they had an insurable interest in the property after that date and that the risk of loss under the contract had passed to them. (Appeal from judgment of Supreme Court, Monroe County, Davis, J. — declaratory judgment.) Present — Dillon, P. J., Hancock, Jr., Callahan, Doerr and Schnepp, JJ.