■ In the Matter of the Estate of ROBERT E. CAREY, Deceased. VITO AGUELI, Respondent; ARTHUR W. DECKER, as Executor of ROBERT E. CAREY, Deceased, Appellant. [672 NYS2d 131] —In a proceeding to compel the payment of a legacy, Arthur W. Decker, the executor of the estate of Robert E. Carey, appeals, as limited by his brief, from so much of an order and decree (one paper) of the Surrogate's Court, Rockland County (Weiner, S.), dated March 3, 1997, as granted that branch of the respondent's motion which was for summary judgment on his cause of action to recover $74,500, representing an amount owed by the estate in connection with a contract to sell a life estate in certain property.

Ordered that the order and decree is reversed insofar as appealed from, on the law, without costs or disbursements, and that branch of the respondent's motion which was for summary judgment on his cause of action to recover $74,500, representing an amount owed by the estate in connection with a contract to sell a life estate in certain property, is denied; and it is further,

Ordered that upon searching the record, that branch of the respondent's motion which was for summary judgment directing payment of the sum of $23,600, representing the balance of the cash bequest to the respondent, is granted, without costs or disbursements, and the matter is remitted to the Surrogate's Court, Rockland County, for the settlement of a decree in accordance herewith.

In a will dated November 26, 1990, the decedent, Robert E. Carey, gave to his friend Ignatius Agueli "the right to remain in possession of [Carey's] personal residence at 11 Lynne Drive, New City, New York, for the balance of [Agueli's] life or for so long as [Agueli] might elect". The will also included a contingent bequest of $50,000 to Agueli, to be given on condition that, at the time of Carey's death, a life insurance policy in that sum had not been made payable for Agueli's benefit. This condition was concededly established. The will also included

several bequests of specific items of personal property to various beneficiaries, and provided that all remaining items of tangible personal property, including an automobile, would be given to Agueli. Further, the will contained cash bequests in stated amounts to various named beneficiaries. The remainder of the estate, including the fee interest in the house noted above, was put into a trust.

Carey died on January 7, 1993, and was survived by Agueli. His will was admitted to probate by decree of the Surrogate's Court, Rockland County, entered April 2, 1993, and letters testamentary were granted to the appellant, Arthur W. Decker, who had been designated as both executor of the estate, and as trustee of the trust created under Carey's will.

The attorneys for Agueli and the attorneys for the appellant entered into negotiations prompted by the apparent lack of liquid assets in the estate sufficient to pay cash bequests, administrative expenses, and estate taxes. These negotiations led to the execution of an agreement dated June 22, 1994, pursuant to which Agueli agreed to sell to the appellant, as executor of the estate, Agueli's life estate interest in the decedent's residence for the price of $74,500. The purchase price was to "be paid at the time the residence is conveyed to a third party or March 1, 1995, whichever date first occurs". Agueli agreed to vacate the residence on or before September 1, 1994. This agreement also provided that the sum of $23,600, which remained to be paid in connection with the $50,000 bequest, would be paid upon Agueli vacating the premises.

Agueli failed to vacate the house as promised, which led to the commencement of eviction proceedings, and to the making of a stipulation of settlement dated April 13, 1995. According to the stipulation, Agueli agreed to vacate the premises on or before May 1, 1995, and consented to a judgment awarding possession to the appellant, without further notice, in the event that he were to fail to meet that deadline.

Agueli died on May 21, 1995. As of the time of his death, Agueli was still residing in Carey's residence, despite the terms of the agreement and the stipulation.

In this proceeding, the respondent, the executor of Agueli's estate, contends that "the sale of the life estate by [Agueli] was not conditioned on his vacating the premises", that Agueli fully performed his contractual obligations by placing a quitclaim deed renouncing the life estate in escrow, and that Agueli's estate was thus entitled to the sum of $74,500. Also, Agueli's estate sought the payment of $23,600, representing the unpaid portion of the $50,000 bequest.

The Surrogate, concluding that the terms of the June 22, 1994, agreement were "severable", held that Agueli's estate was entitled to $74,500, representing the purchase price of the life estate. The Surrogate also held that the Agueli estate was not entitled to the $23,600 which had not yet been distributed in satisfaction of the $50,000 bequest.

The real substance of a life estate consists in the life tenant's right to exclude all others from the possession of the subject property for the duration of his or her own life (see generally, Matter of Cochrane, 117 Misc 18, affd 202 App Div 751; 56 NY Jur 2d, Estates, Powers and Restraints on Alienation, § 37). In general terms, such an estate, by its very nature, terminates upon the death of the life tenant (see, 56 NY Jur 2d Estates, Powers and Restraints on Alienation, § 60), although it may terminate earlier by forfeiture or by voluntary surrender (see, 56 NY Jur 2d, Estates, Powers and Restraints on Alienation, §§ 61, 62).

In this case, the terms of the June 22, 1994, agreement reveal that, in order to induce Carey's estate to pay $74,500 no later than March 1, 1995, Agueli promised to surrender actual possession of the subject property, the essential incident of his life estate, on or before September 1, 1994. The agreement also explicitly provides for the delivery of a quitclaim deed after payment of the $74,500 purchase price and, as noted above, such payment was to follow, by several months at most, Agueli's relinquishment of possession of the property.

. The consideration offered by Agueli in return for the payment of $74,500 was thus two-fold; it consisted both of his promise to vacate the premises by September 1, 1994, and of his further promise to surrender his life estate interest by delivery of the quitclaim deed upon receipt of the $74,500, an event which was to occur no later than March 1, 1995. Agueli's placement of a quitclaim deed in escrow cannot be considered performance of his promise to convey or surrender his life estate (see generally, Caulfield v Improved Risk Muts., 107 AD2d 1013, revd 66 NY2d 793; Stanton v Miller, 58 NY 192; 2 Warren's Weed, NY Real Property, Escrow §§ 2.01, 2.04). Therefore, even if Agueli's estate is correct in its alternative argument that Carey's estate waived compliance with Agueli's promise to relinquish personal possession, the fact remains that the quitclaim deed was not actually delivered at any time during Agueli's life. In other words, before the contract to sell the life estate was performed, the life by which the life estate was measured had already ended, thus resulting in a complete failure of consideration to support the promise to pay $74,500.

Unlike its obligation to pay this $74,500, the obligation of the Carey estate to pay the sum of $23,600 is not primarily derived from the terms of the June 22, 1994, agreement. This agreement contains an acknowledgment that $26,400 had been paid to Agueli as of the date of the agreement "toward the $50,000 bequeathed to [him] by [Carey]". Although the agreement conditions the payment of the remaining $23,600 on Agueli's relinquishment of possession of Carey's house by September 1, 1994, a condition which, as outlined above, was never met, this cannot be construed as a formal renunciation by Agueli of any part of the $50,000 bequest made in Carey's will. We therefore conclude that the Agueli estate is entitled to payment of this $23,600. We note that we may direct the granting of such relief even though the petitioner has not appealed (*see, e.g., Dunham v Hilco Constr. Co.,* 89 NY2d 425; *Lindstedt v 813 Assocs.,* 238 AD2d 386).

For these reasons, the order and decree is reversed insofar as appealed from, that branch of the respondent's motion which was for summary judgment on his cause of action to recover $74,500 is denied, and upon searching the record, that branch of the respondent's motion which was for summary judgment directing payment of $23,600 is granted.

We have examined both parties' remaining contentions to the extent necessary in light of our disposition, and find them to be without merit. Bracken, J. P., O'Brien, Copertino and Pizzuto, JJ., concur.