**In re SPRING GROVE DEVELOPMENT, INC., Debtor.**

**Dollar Bank, FSB, Movant,**

**v.**

**Maronda Homes, Inc., Respondent.**

**Bankruptcy No. 00–29231–JKF.**

**Motion Nos. 01–7373, 02–2507[1].**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 11, 2002.

Eric Schaffer, Reed Smith, LLP, Pittsburgh, PA, for Dollar Bank, FSB.

---

1. At Motion No. 02–2507 Maronda Homes, Inc. requested a hearing with respect to Motion No. 01–7373. Dollar Bank objected to that request. A hearing was held on Motion No. 02–7373 on May 16, 2002, and that motion is moot.

Joseph F. McDonough, Manion, McDonough & Lucas, PC, Pittsburgh, PA, for Maronda Homes, Inc.

John Vetica, Jr., Pittsburgh, PA, for Debtor.

## MEMORANDUM OPINION [2]

JUDITH K. FITZGERALD, Chief Judge.

In the matter before us Debtor's former counsel misappropriated $620,000 in proceeds from the sale of Debtor's real estate. The question we must answer is whether the purchaser who paid the purchase price or the mortgagee bears the loss. Specifically, the mortgagee, Dollar Bank, argues that, although the order confirming the sale in this case provided that the liens on the property were transferred to the proceeds, the liens remained on the property until the proceeds were turned over to Dollar Bank. Because the proceeds were not paid to Dollar Bank at the closing, Dollar Bank contends that its lien was never divested and the purchaser, Maronda Homes, Inc., must pay it. There is no factual dispute.

*Facts*

On or about August 10, 2001, Debtor entered into an Asset Purchase Agreement with J. Castellucci Enterprises & Associates for three parcels of real estate located in Westmoreland County for a purchase price of $620,000. *See* Exhibit A to Maronda Homes, Inc.'s, Statement of Position Concerning Sale of Real Estate and Status of Dollar Banks' Divested Liens, Dkt. # 101. Castellucci Enterprises has a longstanding relationship with Maronda Homes whereby Castellucci Enterprises seeks suitable property on behalf of Maronda, enters into appropriate contracts, and then assigns its purchase rights to Maronda. Paragraph 10.6 of the Asset Purchase Agreement provided that it would bind the parties "and their respective successors, assigns and heirs; provided, however, that a party hereto shall assign its rights or delegate its duties under this Agreement with notice to the other party as to whom the assignees are." Exhibit A to Maronda's Statement of Position.

The sale hearing was held on November 16, 2001, at which time Maronda's president, Ronald W. Wolf, was present. Although the order confirmed the sale to Castellucci Enterprises, during the hearing it was made clear that Maronda was taking an assignment, would be the actual purchaser, and would pay the balance due at closing.[3]

The court entered an order approving the sale on November 16, 2001. Dkt. # 74. The order provided that the sale was "free and clear of all mortgages, liens, claims and encumbrances". It further provided that "the mortgage liens held by Dollar Bank ... are divested from the real estate being sold via this order and shifted to the fund derived from the sale." The order detailed how the proceeds would be distributed and that closing was to occur by December 3, 2001. On or about November 27, 2001, Debtor notified parties that the closing would occur on November 30, 2001. Dollar Bank received this notice. On November 27, 2001, Dollar Bank provided a payoff letter to Debtor. On November 29, 2001, Debtor wrote to Dollar Bank disputing the payoff amount on the basis that the legal fees charged by the Bank were excessive. Debtor advised the Bank that it would make no distribution to the Bank

---

**2.** The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

**3.** Hand money of $100,000 had been paid before the sale.

unless the Bank agreed to accept payment of principal and interest in full satisfaction of its claim. Dollar Bank refused to waive any part of its claim but agreed to accept payment of principal and interest without prejudice to its right to pursue the balance of its claim. Dollar Bank did not, however, attend the closing on November 30, 2001.

At the closing Debtor's former counsel acted as escrow agent in accordance with the court's November 16, 2001, order confirming the sale. Paragraph 5 of the order detailed how proceeds were to be distributed and included a provision that the balance of Dollar Bank's mortgage[s] would be paid. *See* Dkt. # 74 at ¶ 5. The order further provided at subparagraph G that "All remaining funds shall be held in escrow by Debtor's Bankruptcy counsel, ..., to be distributed by way of the Debtor's future Chapter 11 Plan of Reorganization." Dkt. # 74 at ¶ 5G. Deeds were delivered on November 30 and recorded on December 11 with a certified copy of the November 16 order which provided that the transfers were free and clear of liens and that Dollar Bank's mortgage liens were divested. Dollar Bank was informed that the closing had occurred and sent Debtor's former counsel a letter dated December 4, 2001, confirming its willingness to accept payment of principal and interest without prejudice to its remaining claim for attorney's fees.

On December 11, 2001, at Dkt. # 75, Debtor filed an Objection To Claim of Dollar Bank To Authorize Payment of Allowed Claim From Closing Proceeds. On December 17, 2001, at Dkt. # 76 (Motion # 01–7263), Dollar Bank filed a Motion To Enforce Order Authorizing Debtor's Sale of Property and Requiring Payment of Dollar Bank. (Motion No. 01–7373M). Also on December 17, 2001, at Dkt. # 77, Debtor filed its Report Of Sale. On January 2, 2002, Dkt. # 78, Dollar Bank filed an Objection to Report of Sale. Dollar Bank's motion to enforce the sale order, while not naming a respondent, asked the court to

> order the Debtor to immediately pay Dollar Bank all amounts to which it is entitled under its loan documents, including principal, interest through the date of payment, and all fees and expenses payable under the governing documents (including legal fees incurred in connection with the presentation of this motion) and, pending such payment, to order that the Bank's mortgage lien continues to encumber the Property.

Motion of Dollar Bank, FSB to Enforce Order Authorizing ... Sale ...., Motion No. 01–7373, Dkt. # 76. The motion was not served on Maronda nor was the notice of hearing scheduled for February 13, 2002. At the February 13th hearing, the court entered an oral order requiring Debtor's former counsel to distribute principal and interest through November 30, 2001, to Dollar Bank. Debtor's former counsel was required to submit a written order memorializing this oral order by February 28, 2002, and was directed to escrow an amount sufficient to cover the disputed portion of Dollar Bank's claim. No such order was filed, no payment was made, and no funds were escrowed. In early March, 2002, the United States initiated several forfeiture proceedings involving assets of Debtor's former counsel. This court scheduled a status conference on this bankruptcy case for April 12, 2002. In the meantime, Dollar Bank filed a Supplement to Motion No. 01–7373. This was the first document to be served on Maronda. Maronda filed a response to the Supplement stating that to the extent Dollar Bank was seeking payment from the proceeds of sale, Maronda had no objection but, if Dollar Bank was asserting that its

liens attached to the real estate, the order of November 16, 2001, provided otherwise.

Although not served with the order scheduling the status conference for April 12, Maronda became aware that it was to be held but, from information available to it, Maronda believed that the only matter to be discussed at the status conference was the future progress of the case in light of problems generated by the conduct of Debtor's former counsel. At the April 12th status conference, Dollar Bank submitted a proposed order to the court providing that its mortgage liens remained attached to the real estate. Maronda learned of the proposed order and filed Motion No. 02–2507 requesting a hearing on Motion No. 01–7373, Dollar Bank's Motion To Enforce Order Authorizing ... Sale of Property and Requiring Payment .... [4] The hearing on Dollar Bank's motion was held on May 16, 2002.

Dollar Bank's position is that its mortgage liens were never divested because Dollar Bank was not paid at closing. Dollar Bank also asserts that it was Maronda's responsibility to make sure that Dollar Bank was paid from the proceeds of sale. In Dollar Bank's objection to Maronda's motion requesting a hearing with respect to Motion No. 01–7373, Dkt. # 104, Dollar Bank argues, *inter alia,* that Maronda is asking this court to amend its November 16, 2001, order.[5] Maronda's motion does not request that relief. Furthermore, no amendment to the order is required. The order clearly divested the liens from the property and imposed them on the proceeds of sale without condition. Proceeds were disbursed at the closing on November 30, 2001. Dollar Bank did not receive its share of the proceeds at closing because Dollar Bank did not appear at the closing and did not act to stay the closing or seek other relief from the court. The fact that Dollar Bank did not receive funds at closing does not establish that its liens were not divested on November 16. Dollar Bank argued at the May 16th hearing that Maronda is liable for the misconduct of Debtor's former counsel because former counsel was, in effect, Maronda's agent, making Maronda the principal. In this regard Dollar Bank cites *In re Arrow Mill Development Corp.,* 185 B.R. 190 (Bankr. D.N.J.1995). That case involved rent payments that were placed in escrow pending resolution of a dispute between a shopping center tenant and a chapter 11 debtor. The court held that rent payments did not become estate property because the condition that would have vested title in the debtor as the escrow grantee never occurred. (That condition was an arbitration award allowing for retroactive adjustment.) *Id.* at 194. Thus, the escrow funds in *Arrow Mill* never became estate property. In *Arrow Mill* the grantor of funds, although not in possession of the funds, held the legal title. In the case before us, the funds in the hands of Debtor's former counsel were subject to creditors' liens— those same liens that, before issuance of the order confirming the sale, had attached to Debtor's real estate. Once this court entered the order confirming the sale, the liens were *divested* from the real estate and attached solely to the funds. The fact that the funds disappeared through the escrow agent's misconduct does not undo the effect of the sale confirmation order. Furthermore, there was no condition precedent to the liens attaching to the proceeds.

Dollar Bank also cites *Zaremba v. Konopka,* 94 N.J.Super. 300, 228 A.2d 91 (1967), where a contract for sale of real

---

**4.** On December 17, 2001, at Dkt. # 77, Debtor filed its Report Of Sale.

**5.** The court has heard the motion.

estate provided for a down payment and was contingent on the purchasers getting a mortgage. When the real estate agent embezzled the down payment, the purchasers waived the contingency in part. The court held that the loss was to be borne by the purchasers who had at least equitable title to the escrowed down payment. The court stated as the "general rule" that, between buyer and seller, the loss falls on the one who owns the property at the time of the loss. Pennsylvania law provides that Debtor as mortgagor is deemed to have transferred the property subject to the mortgage to the mortgagee in fee simple upon the condition that, if the mortgagor repays the debt on time, the mortgagee will reconvey the property. *See Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir.1993). Accordingly, even before the bankruptcy and the sale Dollar Bank held the defeasible fee interest in Debtor's real estate. When the order confirming the sale was entered Dollar Bank's interest in the real estate was transferred to the proceeds of the sale and divested from the real estate. At the time of the closing the funds subject to Dollar Bank's lien were available to Dollar Bank which, from and after the entry of the sale confirmation order, "owned" the funds. Thus, even under the cases Dollar Bank cites, Dollar Bank bears the risk of loss, not Maronda.

We reach the same conclusion with respect to *Asher v. Herman*, 49 Misc.2d 475, 267 N.Y.S.2d 932 (N.Y.Sup., 1966), *Angell v. Ingram*, 35 Wash.2d 582, 213 P.2d 944 (1950), and *Hildebrand v. Beck*, 196 Cal. 141, 236 P. 301 (1925), upon which Dollar Bank relies. *Asher v. Herman* was an action by purchasers to recover the amount of money deposited with an escrow agent who embezzled the funds. Under the facts of *Asher* the sellers were never entitled to the funds because they never had a title which the buyers were obliged to accept. Under those circumstances, the money in escrow was at all times the property of the buyers, who bore the risk of loss. In *Angell v. Ingram*, although the escrow agent was the agent of the seller, the buyers also made him their agent for purposes of making payment when conditions were performed. When the agent absconded, the conditions had not been performed and the court held that the agent had been holding the money as buyer's agent. However, title to the property did not pass because conditions of the escrow had not been complied with and purchasers would have to give the sellers the amount that had been entrusted to the escrow agent (less certain amounts that had been paid for seller's benefit). In *Hildebrand v. Beck*, the escrow agent was instructed by the seller that a deed was to be delivered to the buyer when the purchase price was paid to the escrow agent for the seller's account. The buyer authorized the escrow agent to use the deposit when the escrow agent secured a title guaranty. The court held that if, before the title guaranty was obtained by escrow agent, the agent embezzled the deposit, it was the buyer's money that was lost. None of these cases apply to the situation before us. None of the cases cited by Dollar Bank deal with bankruptcy court orders confirming sales and divesting liens.

Dollar Bank also cites *Friedman v. Parkway Baking Co.*, 147 Pa.Super. 552, 24 A.2d 157 (1942), which dealt with an employer's liability for his employee's fraudulent conduct and *B.J. McAdams, Inc. v. Boggs*, 439 F.Supp. 738 (E.D.Pa. 1977), which concerned summary judgment with respect to an employee's breach of fiduciary duty. *See also Robert Howarth's Sons v. Boortsales*, 134 Pa.Super. 320, 3 A.2d 992, 994 (1939), wherein the court quoted *Mechem on Agency*: "It may also

happen that, while the agent's fraud alone would not under the circumstances involve the principal, the latter himself may, by some culpable act or omission of his own, so supplement or assist the agent's act as to charge the principal with the consequences". Even assuming, which we do not, that Maronda was Debtor's former counsel's principal, Dollar Bank makes no allegation that Maronda committed a "culpable act or omission". Dollar Bank cites *Bachman v. Monte*, 326 Pa. 289, 192 A. 485 (1937), where the issue was whether the insurer conspired with the insured to defeat liability by persuading the insured to stay away from a trial. The court discussed various aspects of the law governing principals' liability for conduct of their agents and, while we agree that the general principles of law discussed exist, none of them apply to the case before us. Dollar Bank further cites *In re Oyster Bay Cove, Ltd.*, 161 B.R. 338 (Bankr.E.D.N.Y.1993), *affirmed* 196 B.R. 251 (E.D.N.Y.1996), for the proposition that Maronda is obligated to pay Dollar Bank under this court's order. *Oyster Bay* is inapplicable to the matter before us. The court in *Oyster Bay* noted that

> The Order which approved the Trustee's application to sell the property free and clear of all liens, claims encumbrances and rights of others of whatever kind or nature . . . , with such liens to attach to the proceeds of the sale of the property, means that the property was to have been sold free and clear of liens against the property, i.e. mortgage liens, judgment liens, etc., which could attach to the proceeds. The language does not indicate that the property is to be sold free and clear of non-monetary restrictions of record which run with the land.

*Id.* at 342. In the matter before us there are no nonmonetary restrictions at issue. We find that none of the cases cited by Dollar Bank support its theory that Mar-

onda is liable to it for the proceeds of sale misappropriated by Debtor's former counsel, or that Dollar Bank's liens remain attached to the property. The order specifically transferred the liens to proceeds and there were, in fact, proceeds to which the liens attached. This is not a case in which the sale failed to close or one in which no proceeds were generated. Thus, although the court expected Dollar Bank to be paid at closing and did not expect an attorney who was an officer of this court to abscond with the money, nonetheless, payment to Dollar Bank was not a condition of the transfer of the lien to proceeds. The creation of the fund was all that was needed to effect the transfer of the lien.

In *Neale v. Dempster*, 179 Pa. 569, 36 A. 338, 340 (1897), the agreement of sale provided that

> if $1,000 per acre should be paid by the purchaser, the vendors should release from the lien of the mortgage any portion of the land which the purchaser should ask and describe. The money was paid. The land was described. The release was executed. Because the money was part of the purchase money of the land, and because the release of the mortgage extinguished the purchase money debt as to that land, the bond also, for the same debt, was incapable of enforcement against that particular land.

Dollar Bank asserts that this case stands for the proposition that "only payment entitles a debtor to satisfaction of a mortgage". Brief of Dollar Bank, FSB in Opposition to Motion of Maronda . . . Requesting a Hearing . . . , Dkt. # 105 at 10. Dollar Bank is not asserting that Debtor is liable for the missing funds but that Maronda as purchaser is liable. This case is inapposite to the instant situation where the liens were divested from the real estate, transferred to the proceeds, and paid, in full, by the buyer.

Dollar Bank cites *Leedom v. Spano*, 436 Pa.Super. 18, 647 A.2d 221 (1994), where the court held that buyers could not rely on a forged mortgage release to assert bona fide purchaser status. Again, this case is neither relevant to nor dispositive of the matter before us. Thus, whereas Dollar Bank has made an admirable effort searching for cases apposite to the situation before the court, it has not found its goal.

The court in *In re Riverside Investment Partnership*, 674 F.2d 634 (7th Cir.1982), stated that "[g]enerally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale." *Id.* at 640. In the matter before us the order confirming the sale explicitly provided that the liens were divested from the property and attached to proceeds. There were no conditions to the effect of that order. Likewise, there were no conditions to the effect of the sale confirmation order in this case.

In *Bartholomew v. Loreno*, 49 Pa. D. & C.3d 70, 1987 WL 55838 (No. 199 C.D., Pa.Com.Pl., Mercer County, October 22, 1987) (No. 199 C.D.1987), the court held that a real estate agent may be liable to a purchaser for return of a deposit if the agent held the deposit as escrow agent for the benefit of the buyer and seller until consummation of the sale. The position of the real estate agent in *Bartholomew* is similar to that of Debtor's former counsel in this case, not Maronda. This case does not support Dollar Bank's assertion that the lien was not divested from the real estate.

In short, the cases Dollar Bank cites do not support its position. An order by a bankruptcy court confirming a sale free and clear of liens, and which states no conditions to the divestment of the liens from the real property and the transfer to the proceeds of sale as substitute collateral, effects a transfer to a purchaser who pays the sale amount. In this case, Maronda is such a purchaser. That Debtor's former counsel misappropriated the funds does not result in resurrection of the liens that were divested. A closing was held and the record indicates that funds were available for distribution to Dollar Bank at that time. Dollar Bank failed to appear at the closing. Nonetheless the closing went forward and the deed to the buyer was issued and recorded. Maronda owns the property free and clear of Dollar Bank's mortgage lien.

An appropriate order will be entered.

## ORDER DENYING DOLLAR BANK'S MOTION TO ENFORCE ORDER AUTHORIZING DEBTOR'S SALE OF PROPERTY AND REQUIRING PAYMENT OF DOLLAR BANK

**AND NOW,** this 11th day of **October, 2002,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Dollar Bank's Motion To Enforce Order Authorizing Debtor's Sale of Property and Requiring Payment of Dollar Bank (Motion No. 01–7373M) is **DENIED.**

It is **FURTHER ORDERED** that Maronda Homes, Inc.'s, request for a hearing, filed at Motion No. 02–2507, is moot, the hearing having already been held.

## ORDER SETTING STATUS CONFERENCE ON DEBTOR'S OBJECTION TO CLAIM OF DOLLAR BANK AND ON DOLLAR BANK'S OBJECTION TO REPORT OF SALE

**AND NOW,** this 11th day of **October, 2002,** it is **ORDERED** that a status conference on Debtor's Objection To Claim of Dollar Bank To Authorize Payment of Allowed Claim From Closing Proceeds (Dkt. No. # 75) and Dollar Bank's Objection to

Report of Sale (Dkt. No. # 78) will be held on **October 25, 2002,** at **9:30 a.m.,** Courtroom A, 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania.